[See Case No. 4,320.]

---

## Case No. 13,522.

### STRANAHAN v. GREGORY et al.

[4 N. B. R. 427 (Quarto, 142).] [1]

District Court, D. Vermont. 1871.

BANKRUPTCY—INSOLVENCY—KNOWLEDGE OF CREDITOR—INTEREST AND COSTS.

A person is held to be insolvent when he is unable to discharge his debts in the usual course of business of persons engaged in the same trade or occupation; hence, where creditors have accounts overdue seven or eight months, and finally have to resort to legal measures for the collection of them, they must be considered as having reasonable cause to believe their debtor insolvent, and money received under these circumstances must be paid to the debtor's assignee in bankruptcy, together with interest and costs of the proceedings instituted by said assignee for the recovery of the money.

[Cited in brief in Cook v. Whipple, 55 N. Y. 156; Noble v. Scofield, 44 Vt. 284.]

This is a petition in favor of Stranahan, assignee of Mark Bannister, bankrupt, praying that the defendants, Gregory & Co., be adjudged to pay to said assignee two hundred dollars, alleged to have been paid to Gregory & Co. by the bankrupt, in fraud of the bankrupt law [of 1867 (14 Stat. 517)]. Defendants' plea denies that they had any knowledge of the insolvency of the bankrupt, or that they had any reason to suppose that he was insolvent when the money was paid. It appeared from the evidence that Bannister, the bankrupt, had been for some years a small trader in Richford, in the northern part of Vermont. That he had been in the habit of buying goods of Gregory & Co., at Bennington, for two or three years. That the bills he made were payable in cash or on demand, and that for some time he paid them when presented. That some seven or eight months before the 15th of November, 1869, a balance had accrued against him of some two or three hundred dollars, and that Gregory & Co. repeatedly called upon him for the amount due, which he did not pay, but put them off by saying that he would as soon as he could. That in October, 1868, the custom-house officers seized at St. Albans, some ten hundred dollars' worth of butter belonging to Bannister, as smuggled property, which Bannister bonded and took back into his possession. That in November, 1808, the government prosecuted him for the penalty, about two thousand dollars, double the

---

[1] [Reprinted by permission.]

value of the butter seized, and attached all his real estate, and that both prosecutions are still pending in the court, which Miner, one of the defendants, well knew, Bannister having talked with him about it. It further appeared that Bannister had been for some eighteen months previous to the 15th of November, 1869, owing one Rublee, a trader in St. Albans, about twelve hundred dollars. That the demand was left with one Powell, an attorney in Richford, for him to collect as fast as he could. That Bannister had for some time been in the habit of paying Powell small sums of money, and turning out to him small demands against his (Bannister's) customers, to be collected and applied upon the Rublee debt, so that by the 1st of November, 1869, the debt had been reduced to some one or two hundred dollars. That about the 1st of November, 1869, Mr. Miner, one of the firm of Gregory & Co., procured a writ of attachment in their favor against Bannister, and with it went up to Richford for the purpose of securing their debt. That he went to Mr. Powell, the attorney aforesaid, for his advice in relation thereto. That upon consultation Powell advised him, that in consideration of the bankrupt law, he had better not attach, but to get security or payment some other way if he could. Powell told him about the Rublee debt, and how he had been collecting it. That thereupon Miner went to see Bannister. That Bannister paid him fifty dollars in money, and gave him an order for fifty dollars on a responsible person in Burlington, and Miner sold him a small bill of goods—twenty-five or thirty dollars' worth. That Miner then went back to Powell, told him what he had done with Bannister, and said that he would leave the writ with him (Powell), to be used if he thought advisable. That Miner came back to Burlington and presented the order, which the drawer refused to pay or accept, saying that he owed Bannister nothing. Miner at once wrote back to Powell that if Bannister did not immediately pay or otherwise secure the debt, to have the attachment served. When Powell received the letter he went to Bannister and informed him what he was directed to do. Bannister then paid the debt, partly in money and partly in demands against other persons, which Powell collected, and in a few days transmitted the amount, two hundred and six dollars, to Gregory & Co., at Burlington. It further appeared that all of Bannister's property, real and personal, amounted to about two thousand dollars in value; his only interest in real estate consisted of a bond for a deed of a house and lot in Richford. On the 15th day of February, 1870, the creditors of Bannister petitioned to have him declared a bankrupt, and such proceedings were had thereon, that, on the 5th day of April, 1870, he was so adjudged; and on the 27th day of April, Stranahan was duly appointed assignee. It appeared that Bannister absconded the 1st day of February, 1870, and has never returned. It further appeared that there had been no material change in his property or pecuniary condition, from the 1st of November, 1869, to the 15th of February, 1870. It further appeared that on the 15th day of February, 1870, Bannister was owing five thousand eight hundred dollars in addition to the claims which the government was prosecuting against him, and that his assets of every description were less than two thousand dollars. It was admitted that a demand was made of Gregory & Co., by the assignee, for the repayment of the money before the filing of this petition.

Dewey, Noble and Smith, for petitioner.
L. R. Englesby, for petitionees.

SMALLEY, District Judge. The evidence in this case shows clearly that Bannister, the bankrupt, was largely insolvent when he made the payment to Gregory & Co. That is not denied by the defendants, but they maintain that they had no knowledge of such insolvency, nor "reasonable cause to believe him to be insolvent." Miner, one of the defendants, testified that he did not know him to be insolvent, and did not suppose him to be so; and Gregory, the other defendant, does not seem to have known much about Bannister or his business in any way.

The question then is, did Miner, from this evidence, have reasonable cause to believe Bannister to be insolvent when he forced the payment of this money? What is the meaning of the word "insolvent," as used in the bankrupt law? It has often been defined by judges in different sections of the Union. I have never known or heard of more than one definition upon that question. The courts seem to have been much more unanimous upon that, than some other clauses of the bankrupt law. A person is held to be insolvent, when he is unable to discharge his debts in the usual course of business of persons engaged in the same trade or occupation. This rule has been repeatedly laid down by this court, and I see no reason to change it. Apply that rule to this case. Bannister had been trading with Gregory & Co. some two or three years, and finally run behindhand between two and three hundred dollars, which had been overdue some seven or eight months. They had repeatedly called upon Bannister for payment, but unsuccessfully. They finally procured a writ of attachment, and went to Richford to get pay or security; went to an attorney there; consulted with him; were told that the attorney had been over a year collecting a debt of about twelve hundred dollars against Bannister; that he had received it in small sums at different times, partly in money and partly in demands turned out to him (Bannister) against his customers. The attorney advised Miner not to attach. The reason is

obvious. It might put Bannister into bankruptcy. Miner then went to Bannister, who gave him fifty dollars in money, and an order for fifty dollars more. Miner came home, leaving the writ with the attorney; presents the order; payment is refused; he then writes to the attorney to have the attachment served. The attorney thereupon goes to Bannister, who pays him Gregory & Co.'s debt, partly in money and partly in demands, and after collecting the demands he pays the proceeds of them over to defendants. It should be borne in mind, that Miner was before this fully informed of the government prosecutions against Bannister and his property. These facts in relation to Miner's knowledge are not disputed. Did they not, therefore, furnish Miner, in the language of the law, reasonable cause to believe him (Bannister) to be insolvent, within the meaning of the bankrupt law? Without multiplying words, I think it very clear that they did. I cannot doubt it.

It is therefore ordered and adjudged that Gregory & Co. pay to the assignee the sum paid them by Bannister on the 15th day of November, 1869, with interest, and the cost of this proceeding.