HEARD NOVEMBER TERM, 1874.

## BRATTON vs. ANDERSON.

Under the 21st Section of the Bankrupt Act of the United States it is the duty of the State Court, in ordinary actions and proceedings pending in such Court against the bankrupt, to stay such actions or proceedings, on the demand of the defendant, as in said Section is directed.

A proceeding under the 14th Section of the Act of this State, of 25th November, 1873, to obtain a lien on real estate under a judgment, is such a proceeding as the State Court is bound to stay under the said 21st Section of the Bankrupt Act.

BEFORE MACKEY, J., AT YORK, JULY, 1874.

On the 2d July, 1874, the plaintiffs served a summons on the defendant to appear at the term of the Circuit Court to be held for York County, on the          day of          187  , and show cause, if any he had, why a judgment of the plaintiffs against the defendant, obtained on the 9th of February, 1872, should not be revived and become a lien on all the real property of the defendant in York County, in accordance with the Act of the General Assembly of this State, approved 25th November, 1873.

On 10th July, 1874, the defendant filed his answer with the Clerk of the said Court, and also served a copy on plaintiffs' attorneys. For cause why the relief asked for in the summons should not be granted, the defendant stated that on the 21st of November, 1872, he had filed his petition in the office of the Clerk of the District Court of the United States, for the District of South Carolina, praying for himself the benefits of the Bankrupt Act, and that he had thereupon been duly adjudged a bankrupt; that the assignee in bankruptcy of the defendant had sold a portion of the defendant's real estate, and that the balance thereof had been set off and exempted to the defendant as a family homestead; that the assignee's report of said exemptions had been filed with the Register in Bankruptcy, on the 7th day of May, 1873, and that there being no exceptions thereto, the Hon. George S. Bryan, Judge of said District Court, had made an order on the 15th day of January, 1874, confirming said exemptions; that the homestead referred to was all the real estate owned by the defendant; and that the debt of the plaintiffs had been contracted previous to the bankruptcy of the defendant.

It was admitted that the plaintiff had not proved his claim in bankruptcy; that defendant had not been discharged in bankruptcy; that he had filed his petition for discharge; and that a hearing had been appointed for the 1st August, 1874.

On the 23d July, 1874, after the argument, His Honor overruled the answer, holding that the defenses therein set forth were insufficient, and granted an order making said judgment a lien, for ten years, on all the real property of the defendant in York County.

The defendant appealed, on the following grounds :

1. That the Circuit Court did not have jurisdiction to hear the

motion while the defendant was in bankruptcy, the debt having been contracted before said bankruptcy.

2. That the plaintiffs were barred from making the motion, by their own laches, in not objecting to the homestead exemption, within the time required by law.

3. That the order of His Honor George S. Bryan, confirming the exemptions to the defendant, could not be abridged by an order of this Court.

4. That the rights of all parties were fixed on the 21st of November, 1872, when the defendant filed his petition in bankruptcy, and that the plaintiffs cannot now acquire additional rights over defendant's property.

5. That the said decree is in violation of the provisions of the Act of Congress, entitled "An Act to establish a uniform system of bankruptcy throughout the United States," approved March 2, 1867, and the Acts amendatory thereto.

6. That the decree is, in other respects, contrary to the law and the facts alleged and admitted in the summons and answer.

*J. R. S. Thompson*, for appellant:

In support of the appeal in this case, the following points and authorities are respectfully submitted to the Court—

I. That by the Bankrupt Act the respondents were made parties to the proceedings in bankruptcy; that those proceedings were in the nature of a suit between the parties; and that the State Court had no right to assume jurisdiction of the motion.

The 1st Section of the present Bankrupt Act constitutes the several District Courts of the United States, Courts of Bankruptcy, and enacts that the jurisdiction thereof shall extend—

" To all cases and controversies arising between the bankrupt and any creditor or creditors who shall claim any debt or demand under the bankruptcy ;

" To the collection of all the assets of the bankrupt ;

" To the ascertainment and liquidation of the liens and other specific claims thereon ;

" To the adjustment of the various priorities and conflicting interests of all parties ;

" And to the marshaling and disposition of the different funds and assets, so as to secure the rights of all parties, and due distribution of the assets among all the creditors ;

"And to all acts, matters and things to be done under and by virtue of the bankruptcy, until the final distribution and settlement of the estate of the bankrupt, and the close of the proceedings in bankruptcy."

Section 21 of said Act enacts—

"And no creditor whose debt is provable under this Act shall be allowed to prosecute to final judgment any suit at law or in equity therefor against the bankrupt until the question of the debtor's discharge shall have been determined;

"And any suit or proceeding shall, upon the application of the bankrupt, be stayed, to await the determination of the Court in bankruptcy on the question of discharge: *Provided*, There be no unreasonable delay on the part of the bankrupt in endeavoring to obtain his discharge: *And provided, also,* That if the amount due the creditor is in dispute, the suit, by leave of the Court in bankruptcy, may proceed to judgment for the purpose of ascertaining the amount due, which amount may be proved in bankruptcy, but execution shall be stayed as aforesaid."

The 11th Section of the Act requires that the creditors shall be notified by mail and publication that a warrant has been issued against the estate of the debtor; that the payment of any debts and the delivery of any property belonging to such debtor, to him or for his use, and the transfer of any property by him, are forbidden by law, and that a meeting of the creditors of the debtor to prove their debts and choose an assignee will be held at a designated place and time.

From the record in the proceedings below, nothing appearing to the contrary, we must presume that the proceedings in the Bankrupt Court were regular and legal, and that the respondents were notified by mail and by publication, as required by the 11th Section of the Act. Upon that assumption, and the facts stated in the brief, we submit the following authorities in support of the first point stated above:

*In Re. Farrell,* 5 B. R., 125, Judge Nixon says: "A proceeding in bankruptcy is in the nature of a suit in which the bankrupt appears as plaintiff, and the creditors as defendants; the plaintiff asking the Court for a judgment against all and each of the defendants, discharging him from his indebtedness to them."

In Bump on Bankruptcy, (6th ed., p. 28,) it is said: "The mode of obtaining jurisdiction over the creditor is prescribed by

the Act, and consists in a proper service of the process upon him. This service consists of two parts—the publication and the mailing of the notices."

In *Markson* vs. *Heaney*, 4 B. R., 165, (Dillon, C. J.,) it is said: "The Bankrupt Court is invested with this jurisdiction over the bankrupt and his estate, and over creditors who are brought involuntarily into it, in order to administer the estate for the benefit of all the creditors, according to their respective rights."

In *Re. York* vs. *Hoover*, 4 B. R., 156, (Woods, J.): "The proceeding in bankruptcy from the filing of the petition to the discharge of the bankrupt and the final dividend, is a single statutory case or proceeding." And to the same effect is the case of *Alabama Railroad Co.* vs. *Jones*, (5 B. R., 97, Woods, J.)

In *Re. Barrow*, 1 B. R., 125: "The jurisdiction of a District Court of the United States, sitting as a Court in Bankruptcy, is superior and exclusive in all matters arising under the statute. The estate surrendered is placed in the custody of the Court so sitting in bankruptcy, and the officer appointed to manage it is accountable to the Court appointing him, and to that Court alone. No Court of an independent State jurisdiction can withdraw the property surrendered, or determine in any degree the manner of its disposition." To same effect, *In Re. Schnepf*, B. R. Sup., 41, (Benedict, J.,) and *In Re. Bowie*, 1 B. R., 185, (Giles, J.)

*Jones* vs. *Leach*, 1 B. R., 165, (Hill, J.): "The commencement of proceedings in bankruptcy transfers to the District Court the jurisdiction over the bankrupt, his estate, and all parties and questions connected therewith, and operates as a *supersedeas* of the process in the hands of the Sheriff, and an injunction against all other proceedings than such as may thereupon be had under the authority of the District Court, until the question of bankruptcy shall be disposed of." To the same effect see *Pennington* vs. *Sale and Phelan*, 1 B. R., 167, (Hill, J.)

In *Re. Vogel*, 2 B. R., 138, (Blatchford, J.): "As soon as the petition in bankruptcy is filed, the property of the insolvent, so far as any interference therewith is concerned, is thereby brought *eo instante* into the Bankrupt Court, and placed in its custody and under its protection as fully as if actually brought into the visible presence of the Court. Being in the custody of the Bankrupt Court, no other Court, and no person acting under any process from any other Court, can, without the permission of the Bankrupt

Court, interfere with it; and to so interfere is a contempt of the Bankrupt Court." To same effect see *In Re. People's Mail Steamship Co.*, 2 B. R., 170, (Blatchford, J.); *In Re. Kerosene Oil Co.*, 2 B. R., 164, (Benedict, J.); *Brock* vs. *Terrel*, 2 B. R., 190, (Hill, J.); and *In Re. Wallace*, 2 B. R., 52, (Deady, J.)

In the case of *Shawhan* vs. *Wherritt, Assignee*, 7 How., 627, a case arising under the Bankrupt Act of 1841, (which Act did not require notification by mail, but simply by publication,) the Supreme Court of the United States says: "The public notice required by the Act having been given, the creditors must be treated as having notice of the proceedings, and an opportunity to make their objection to them; and having neglected or refused so to do, they ought not to be allowed to impeach them collaterally, as they are in the nature of a proceeding *in rem*, before a Court of record having jurisdiction."

And in *Gibson* vs. *Green*, 45 Miss., 209, it is said: "The suggestion of the pendency of the proceedings in bankruptcy suspends the cause until the final action of the Bankrupt Court granting or denying a discharge."

How far the Act prevents *lien* creditors from enforcing their liens in the State Courts has been much discussed, and the decisions are conflicting; but that creditors not holding liens, (as in the case now before the Court,) must seek their remedies in the Bankrupt Court alone, I think borne out by an overwhelming weight of authority. Especially was the action of these creditors wrong when they made their motion *after* the bankrupt had filed his petition for discharge, and *before* the day appointed by the United States District Court for hearing the petition had arrived.

II. The plaintiffs were barred from making their motion by their own laches.

The object of the plaintiffs is to obtain a lien upon the homestead set off to the defendant in bankruptcy, and then to enforce this lien, either through the process of the State or United States Courts. We must presume, as before, until the contrary is shown, that the proceedings setting of that homestead were regular and legal. It was set off under the Act of Congress and confirmed by the order of the United States Court. If this allowance of homestead to the bankrupt violates the rights of these creditors, they must pursue their remedy as provided in the Bankrupt Act. But the 19th rule of the Supreme Court of the United States, made in

pursuance of the provisions of that Act, allow only twenty days within which to file exceptions to the assignee's report of exempted property. That report was filed on the 7th of May, 1873, and the plaintiffs have taken no steps to interfere with it until the service of the summons in this case on the 2d of July, 1874.

" Non-compliance with a rule of the Supreme Court is sufficient ground to decline to hear a case and to affirm the judgment of the Court below."—*Sanborn* vs. *Robinson*, 22 Mich., 92, 3 U. S. Dig., 66.

" Appeal dismissed on the ground that the appellants had not brought up their appeal within the legal time."—*Richmond* vs. *Mann*, 23 La., 373, 3 U. S. Dig., 63.

And in Bump on Bankruptcy, p. 143, it is said : " In the absence of fraud, accident or mistake, the exceptions must be filed within the required time." But in this case neither fraud, accident nor mistake has been alleged.

The respondents might have made this question in the United States District Court when the assignee filed his report of exempted property. Under the law they were parties to the proceeding. They have delayed until the recent decisions by Chief Justice Waite and Judge Bond, which, perhaps, satisfy them that, as an abstract proposition of law, it is erroneous to set off a homestead in bankruptcy as against old debts; though when this debt was contracted does not appear from the record ; and they now seek in this way to review and reverse the order of the District Judge. In a case involving this point—*Ex Parte Monteith*, 1 S. C. Rep. 232—this Court says: " Where one loses a suit by his own neglect, he cannot be aided by a bill of review. This is founded on a well recognized principle. ˙A party must not stand off, risk the chance of litigation, and if, perchance, the result be against him, seek a review of the judgment to which his laches has contributed, and which a regular course of defense might have averted."

And in the late case of *Penny* vs. *Taylor*, 10 B. R., 204, in the United States District Court for the Southern District of Mississippi, the circumstances were somewhat similar to those of the present case. The debt due to Taylor was contracted in 1859. In 1868 Penny filed his petition in bankruptcy. In 1869, notwithstanding the bankruptcy, Taylor obtained judgment for his debt. The assignee set off a homestead to Penny ; his report thereof was not excepted to, and was confirmed. In March, 1870, Penny obtained

his discharge. In November, 1872, Taylor caused to be issued an *alias* execution upon his judgment, and levied the same upon the homestead. Penny filed his bill praying for an injunction. In his decree, Judge Hill says: "It is also claimed as ground of demurrer, that neither the land nor defendant's judgment were before the Bankrupt Court, or passed upon by it. This is also a mistake; the bankrupt did bring his claim to the land before the Court, and it was set off to him as a homestead. The bankrupt also, by his schedule, brought his claim before the Court, and if the defendant did not choose to prove it, it was his own neglect, and he must suffer the consequences."

III. The order of the U. S. District Court, made on the 15th of January, 1874, confirming the assignee's report of exempted property, cannot be set aside or made of no effect by the order of the State Court.

In *Peck* vs. *Jenness*, 7 How., 625, the U. S. Supreme Court say : " It is a doctrine of law too long established to require a citation of authorities, that where a Court has jurisdiction, it has a right to decide every question which occurs in the cause, and whether its decision be correct or otherwise, its judgment, till reversed, is regarded as binding in every other Court; and that where the jurisdiction of a Court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another Court." To the same effect, see, also, the case of *Shawhan* vs. *Wherritt*, 7 How., 627, quoted above, on page 4. And in the late case of *Morris* vs. *Swartz*, decided by the Supreme Court of Texas, (reported in 10 B. R., p. 305,) the Court say : " We know officially that there was a general bankrupt law passed on the 2d of March, 1867. This law provides for the office of assignee in every case of bankruptcy, and the acts of such officer cannot be collaterally impeached in the State Courts."

IV. The rights of all parties were fixed on the 21st of November, 1872, when the appellant filed his petition in bankruptcy, and the respondents cannot now acquire a lien upon the property.

It will doubtless be strongly contended for, on the part of the respondents, that the United States Court erred in making the order that was made confirming the assignee's report of exempted property, and that the bankrupt has no right to his homestead exemption. For the reasons above stated, I submit that the credi-

tors are barred from making the exception now, and that, in no event, could they bring the question up in the tribunal they have selected. But admitting, for the sake of argument, that they had the right to make the question, what would be the result? Clearly, that if the bankrupt had no right to the homestead, and the order of the United States Court is a nullity, then, under the 14th Sec-. tion of the Bankrupt Act, the homestead property would vest in the assignee, for the benefit of *all* the creditors. That Section of the Act provides that the register shall convey to the assignee *all* the real and personal estate of the debtor, except such as is exempt. It further enacts that the "assignment shall relate back to the commencement of said proceedings in bankruptcy, and thereupon, by operation of law, the title to all such property and estate, both real and personal, shall vest in said assignee." The title to the homestead, then, being in the assignee, and the creditors proposing to create a lien on the homestead, the assignee would be a necessary party to such proceeding, and it would be a wrong on the other creditors to permit the respondents to obtain a priority over them in the distribution of the bankrupt estate.

In the recent case *In Re. George W. Dillard*, decided in the United States Fourth Judicial Circuit, Judge Bond says: "In our opinion the relation of the bankrupt to his property is fixed the moment he files his petition in voluntary bankruptcy; and in involuntary bankruptcy, so soon as he is adjudicated a bankrupt. The rights of his creditors to his estate are determined at the same time. What the homestead exemptions are at these times, both the bankrupt and his creditors are presumed to know. He petitions, and they resist in the Bankrupt Court, with a full knowledge of the then existing law."

In *In Re. Mosely and Wells*, 8 B. R., 212, (Erskine, J.,) it is said: "A lien, to have any standing in the Bankrupt Court, must be a lien at the time the party becomes a bankrupt."

In *Penny* vs. *Taylor*, 10 B. R., 204, Judge Hill says: If the conveyance made by the bankrupt to his son was void, and the bankrupt had no interest in it as a homestead, then it should be sold for the benefit of all the creditors, no lien having attached to it at the time of the commencement of the proceedings in bankruptcy."

The case before mentioned, of *Shawhan* vs. *Wherritt*, 7 How. 645, is also in point. In that case Shawhan obtained a lien by

proceedings in the State Court after Brandon had become a bankrupt. The United States Supreme Court say : " If notice of this fact to the creditor makes a payment by the debtor void, it is obvious that a security or priority gained by suit in a State Court after such notice could have no better claim to protection ; for notice of the act of bankruptcy to the creditor is the test of the *mala fides*, which vitiates the transaction. * * * We are of opinion, therefore, that the lien obtained by Shawhan upon the property of Brandon, by his proceedings in the State Court, after the notice of the act of bankruptcy, was not saved or protected by the proviso of the second Section of the Act, and that he and the other appellants who had appropriated the assets of the bankrupt to their own use are liable to refund the same to the assignee in this suit."

The rule here set forth is similar to that adopted in our own Courts, (see *Hutchinson* vs. *Bates, Exr.*, 1 Bail., 111,) where the debts of an insolvent estate take rank according to the footing on which they stood at the death of the debtor, although some of the debts, since that time, may have passed into judgments.

*Wilson & Wilson*, contra :

1. The provisions of the Bankrupt Act do not apply to a creditor who has not proved his debt or claim in bankruptcy.—Rice's Manual, p. 56, general clause 99, § 21.

2. They do not apply to a creditor whose debt has been previously " prosecuted to final judgment." Judgment was obtained 9th of February, 1872, before defendant filed his petition.—*Ib.*, § 21.

3. The order of the Circuit Judge was in accordance with the provisions of the Act of the Legislature of 25th November, 1873, and the matter within its jurisdiction.

4. There is no provision of the Bankrupt Act with which the order of the Circuit Judge conflicts. The Act must be construed strictly.

5. The legal effect of the order is a question solely for the United States Court. There is no conflict of jurisdiction involved.

6. The rights of parties were fixed when defendant's petition was filed, only so far as the provisions of the Bankrupt Act extend. Respondent's case is not within the prohibitions of the Act.

7. The judgment was obtained upon a note, dated October 3, 1859. The United States Court would enforce the claim against the homestead exemption.

March 10, 1875.    The opinion of the Court was delivered by

WILLARD, A. J.    It will not be necessary to consider the question, whether the pendency of proceedings in bankruptcy in the District Court of the United States destroys or impairs the jurisdiction of the State Courts over an action commenced prior to the filing of the petition in bankruptcy, either for or against the bankrupt.    The Act of Congress, under which such an interference with the ordinary jurisdiction of the State Courts is alleged to exist, should admit of no other reasonable construction before that conclusion is arrived at.    It is doubtful whether such is the intent of the bankrupt law.    The very clause of that Act, hereafter recited as controlling the results of the present appeal, impliedly admits the continuance of that jurisdiction after the commencement and during the pendency of proceedings of that nature.    Section 21 of the Bankrupt Act of 1867 bears upon the question now to be considered, and contains the following clause: "And no creditor, whose debt is provable under this Act, shall be allowed to prosecute to final judgment any suit at law or in equity therefor, against the bankrupt, until the question of the debtor's discharge shall have been determined, and any such suit or proceeding shall, upon the application of the bankrupt, be stayed to await the determination of the Court in bankruptcy, on the question of the discharge."    Then follows a proviso, intended to secure due diligence in the prosecution of the bankruptcy proceedings, and also to enable the District Court to authorize the parties to the suit in the State Courts to proceed for a specific purpose, notwithstanding the provisions of the Section already recited.    As no question is made here, under the terms of this proviso, it need not be further considered at this time.

The object of the above recited clause is apparent, and needs no resort to implications.    That object is to harmonize the respective jurisdictions of the District and State Courts, and not to destroy that of the latter.

It is manifestly proper that provision should be made for suspending, temporarily, proceedings based upon provable debts of the bankrupt, or affecting his assets in jurisdictions independent of the Court proceeding in bankruptcy, unless such extrinsic jurisdiction can be brought to act in aid of that Court.    Between the filing of the petition in bankruptcy and the final discharge, proceedings in

the State Courts will ordinarily be useless, if not detrimental, to the mutual interests of the bankrupt and his creditors. The status of the liabilities of the bankrupt is fixed with reference to the commencement of bankrupt proceedings, and it is not within the power of the State Courts to alter the state of relations, as affecting the liabilities or estate of the bankrupt, after the jurisdiction in bankruptcy has attached, so as to modify, in any way, the mode of distribution or the effect of a discharge.

We must regard, then, the proper effect of the clause of Section 21, above quoted, to be to make it the duty of the State Courts, in which the action or other proceeding is pending, to grant, on the demand of the defendant, a stay of all proceedings before judgment, or until the determination of the proceeding in bankruptcy, where it appears that there is a proceeding in bankruptcy pending against the defendant, and that the demand on which such action or proceeding is brought is capable of being proved against the bankrupt in such proceeding in bankruptcy.

In the present case, the plaintiffs had a judgment in the Circuit Court prior to the commencement of the proceedings in bankruptcy; but under the law, as it then stood, such judgment did not, in itself, and independently of the issue of an execution thereunder, operate as a lien on the real estate of the judgment debtor. Subsequently the plaintiffs proceeded, in accordance with Section 14 of the Act of November 25, 1873, (15 Stat., 498,) by summons, to make such judgment a lien on the real estate of the judgment debtor. The defendant objected to this proceeding, on the ground that proceedings in bankruptcy were pending against him. The Court refused to allow the objection of the defendant, and proceeded to set up the judgment as a lien against the defendant's estate.

The question to be considered is, whether the case is one contemplated by the above cited clause of Section 21 of the Act of Congress.

Section 14 of the Act of November 25, 1873, after providing that future judgments should be a lien upon real estate, provided as follows: " And in cases where judgments have been obtained since the first day of March, A. D. 1870, a like lien may be obtained by the service of the summons upon the judgment debtor, or, if he be dead, upon his heirs, executors or administrators, to show cause, if any he or they may have, why said judgment should not be and become a lien, in accordance with the provisions of the Act; and

if no sufficient cause can be shown to the contrary, said judgment shall be and become a lien on all the real property of the judgment debtor in the County where entered, for ten years from the date of the filing of such summons, with proof of service thereof, in the office of the Clerk of the Court of Common Pleas of the County where such judgment has been entered."

The proper effect of this proceeding is to give that which is precisely equivalent to a judgment entered originally, as of the day when the original judgment is revived. The revived judgment has, in two respects, characteristics substantially differing from that which is the foundation of the proceeding. It constitutes a lien on real estate in the County, and it runs for ten years from its entry. The proceeding is, then, one based upon an existing judgment, and having for its end the obtaining of a judgment having certain attributes distinct from that on which the proceeding is founded, including a more efficient means of procuring satisfaction and a longer duration of its efficiency. It must, therefore, be considered, as within the intent and meaning of the Act of Congress, a final judgment, and the proceedings to obtain such judgment are subject to be stayed, on the application of the debtor. That application having been duly made, it was the duty of the Court to stay the proceedings on the part of the plaintiff to renew the judgment, until the question of discharge is finally adjudicated.

It is ordered and adjudged that the order of the Circuit Court, and the judgment entered thereon, be set aside, and that the proceedings of the plaintiffs to renew the judgment be stayed until the District Court shall have finally adjudicated the right of the defendant to a discharge in bankruptcy, or shall authorize the parties to such proceeding to further prosecute the same.

*Moses,* C. J., and *Wright,* A. J., concurred.