553 S.E.2d 251

John Herschel BRAGG, Respondent,

v.

Susan Enid Cobb BRAGG and Raymond
Wayne Cobb, Appellants.

No. 3381.

Court of Appeals of South Carolina.

Heard May 7, 2001
Decided Aug. 6, 2001
Rehearing Denied Sept. 19, 2001.
Certiorari Denied Jan. 24, 2002.

18

Richard H. Rhodes, of Burts, Turner, Rhodes & Thompson, of Spartanburg; and John K. Fort, of Drayton, for appellants.

James C. Cothran, Jr., of Spartanburg, for respondent.

HEARN, Chief Judge:

Susan Enid Cobb Bragg (Wife) and Raymond Wayne Cobb (Cobb), Wife's father, appeal from several aspects of a divorce decree. We affirm in part and reverse and remand in part.

### Facts and Procedural History

The parties married in June 1989 in Alabama, and moved to South Carolina immediately thereafter. They have one son,

born in 1996. At the time of the final hearing Husband was 43 years old, and Wife was 33 years old. Both parties were employed during the marriage. Husband has a bachelor's degree in engineering technology and is employed at INA Bearing Company earning a monthly salary of approximately $5,168. Wife has a master's degree in counseling and was employed as a teacher during the marriage. At the time of the divorce hearing, Wife had relocated to Alabama and was employed by a mental health center earning approximately $1,916 per month.

During the marriage, Wife obtained credit in her own name without Husband's knowledge or consent, accumulating approximately $33,800 in debt. In 1996, Wife filed for bankruptcy without informing Husband. During the bankruptcy proceedings, she gave false information to the bankruptcy court, failing to disclose her interest in the parties' marital home. By order of the bankruptcy court, Wife's debts were discharged and the proceeding dismissed based on the court's conclusion it was a "no asset" case.

In May 1997, Wife was admitted to Charter Hospital and treated for depression. She was diagnosed with major depressive disorder and prescribed therapeutic treatment and antidepressant medication. While at Charter, Wife told Husband about the bankruptcy proceeding.

Husband commenced this action against Wife in January 1998, seeking a divorce on the ground of physical cruelty, child custody, equitable division of marital assets and debts, and attorney fees. Wife answered and counterclaimed, requesting child custody, equitable apportionment, and attorney fees. The family court awarded Wife temporary custody of the parties' child and child support, established a visitation schedule, and held all other issues in abeyance pending a final hearing on the merits.

In March 1998, Husband began an investigation which revealed Wife's failure to list the marital home as an asset in the bankruptcy. When Husband reported this to the bankruptcy court, it ordered the case reopened. On August 28, 1998, the bankruptcy court entered an order approving the sale of Wife's interest in the marital home to Cobb for $35,000, which was applied to Wife's debts. The bankruptcy trustee

did not, however, execute a deed in favor of Cobb.[1] Husband did not object to this resolution, and the bankruptcy proceedings were again closed.

By amended complaint, Husband joined Cobb as a party defendant to the divorce because of Cobb's interest in the marital home. Cobb sought an order directing that the home be sold or that Husband pay him for his interest therein. Husband filed a reply, admitting Cobb had an interest in the home, but alleging his interest should be the same as that to which Wife would have been entitled absent the bankruptcy proceedings.

During trial, the family court learned the marital home was still involved in bankruptcy proceedings and issued an order of continuance. The trial reconvened in March 1999. At that time, both parties moved to amend their pleadings to seek a divorce on the ground of one year's continuous separation.

By order dated July 2, 1999, the family court: (1) granted the parties a divorce on the ground of one year's continuous separation; (2) awarded custody of the parties' child to Husband; (3) apportioned the $119,131 marital estate on a 65%/35% basis in favor of Husband; and (4) awarded Husband $6,000 in attorney fees and costs. Having found Wife received assets valued at $27,694 in partial satisfaction of her 35% share of the estate, the court ordered Husband to pay Wife $14,002 to fully accomplish equitable apportionment. Specifically regarding disposition of the marital home, the court found that notwithstanding Cobb's one-half interest, Cobb "in essence, by way of equity, stands in the same shoes as his daughter." Based on this finding, the court denied Cobb any interest in the marital home, and ordered him to deed his interest to Husband. This appeal followed.

During the pendency of this appeal, the bankruptcy court found the provisions of the family court's order denying Cobb a one-half interest in the marital home constituted an invalid collateral attack on the bankruptcy court's authorization of the sale of Wife's one-half interest in the home. This court granted Husband's motion for leave to move before the family court to amend in light of the bankruptcy court's order. By

---

1. However, a later bankruptcy court order authorized the trustee to issue a deed to Cobb.

supplemental order, the family court recognized Cobb's one-half interest in the marital home, but found the allocation of equity in the marital home between Husband and Wife should be adjusted to account for Cobb's interest therein. Specifically, the court reaffirmed its 65%/35% award of equitable distribution, and ordered:

A. At such time as husband compensates [Cobb] for [Cobb's] one-half interest in the marital home, said amount will be charged to [W]ife as an asset. . . .

B. [H]usband's equity in the marital home . . . will be correspondingly reduced to an amount, so that his equity, when added to the amount charged to [W]ife, equals the equity of the marital home as of the filing date ($44,188 . . .).

. . .

D. While the exact buy-out of [Cobb's] interest is unknown, it is probable [W]ife will now owe [H]usband money to effectuate a 65%/35% division of the assets. . . .

E. [W]ife is to therefore compensate [H]usband for any difference in what [H]usband would have received under the original order ($77,435) and what he will actually receive after buying out [Cobb's] interests . . .

Wife and Cobb again appealed. They argue (1) Wife should have been awarded child custody; (2) Cobb should have been awarded an interest in one-half of the marital home; (3) Wife should have received a higher percentage of the marital estate's equitable apportionment; and (4) Husband should not have been awarded $6,000 in attorney fees.

## Standard of Review

In appeals from the family court, this court has the authority to find the facts in accordance with its own view of the preponderance of the evidence. *Rutherford v. Rutherford*, 307 S.C. 199, 204, 414 S.E.2d 157, 160 (1992). This broad scope of review does not, however, require this court to disregard the findings of the family court. *Stevenson v. Stevenson*, 276 S.C. 475, 477, 279 S.E.2d 616, 617 (1981). Neither are we required to ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to

their testimony. *Cherry v. Thomasson*, 276 S.C. 524, 525, 280 S.E.2d 541, 541 (1981).

## Discussion

### I. Child Custody

Wife argues the family court erred in awarding Husband custody of the parties' son. We disagree.

In all child custody controversies, the controlling considerations are the child's welfare and best interests. *Cook v. Cobb*, 271 S.C. 136, 140, 245 S.E.2d 612, 614 (1978). In awarding custody, the family court should consider how the custody decision will impact the child's life, including physical, psychological, spiritual, educational, familial, emotional, and recreational aspects. *Pountain v. Pountain*, 332 S.C. 130, 136, 503 S.E.2d 757, 760 (Ct.App.1998). Additionally, the court must assess how each party's character, fitness, and attitude affect the child. *Id.* at 136, 503 S.E.2d at 760. Indeed, "the totality of circumstances peculiar to each case constitutes the only scale upon which the ultimate decision can be weighed." *Davenport v. Davenport*, 265 S.C. 524, 527, 220 S.E.2d 228, 230 (1975).

The family court recognized, as do we, that "[b]oth parties are loving parents, capable of rearing their child independently." Further, the guardian ad litem's report lists positive and negative characteristics of both Husband and Wife and does not overwhelmingly favor either party. Nonetheless, our reading of the record convinces us the family court correctly determined the child's interests are best served by awarding custody to Husband.

Without question, Wife acted irresponsibly regarding the family's finances during the marriage, aggravating the situation through secretiveness and deception. In addition to jeopardizing the economic well-being of her family, Wife's actions in this regard evince poor judgment.

Wife also engaged in an internet affair during the marriage which culminated in a rendezvous with a man at a hotel. While we do not place undue emphasis on this incident because there is no indication the child was adversely affected by

Wife's alleged indiscretion, we have considered the issue as another example of Wife's poor judgment.

The record also shows that Wife has difficulty controlling her temper. One of the parties' neighbors testified she witnessed Wife cursing and repeatedly hitting Husband while he held the parties' child. The neighbor further stated Wife admitted she took alcohol to marital counseling sessions, often became impatient with the parties' child, and once cursed at the neighbor's children after they knocked on her door. Husband's brother testified Wife was impatient with the child and cursed at Husband in the child's presence. Wife admitted that on one occasion she became enraged at Husband and kicked a hole in the kitchen wall. According to Husband, Wife struck him on a regular basis, with most of the incidents occurring after her release from Charter Hospital.

Finally, we also share the family court's concern that Wife may not have fully conquered her depression. As late as December 1998, she continued to exhibit symptoms of depression and anxiety despite treatment with antidepressant medication.

Therefore, under the facts and circumstances of this case, we find no error in the family court's decision to award custody to Husband.

## II. Equitable Apportionment

Wife also alleges the family court erred in apportioning the marital estate on a 65%/35% basis. In addition, she specifically challenges the family court's treatment of the marital home in its supplemental order, arguing Cobb should have been awarded a one-half interest in the home because he purchased his interest in the home for valuable consideration. We affirm the equitable apportionment percentages, but reverse the division of assets in light of our disposition of the portion of the marital home previously handled by the bankruptcy court.

The apportionment of marital property will not be disturbed on appeal absent an abuse of discretion. *Bungener v. Bungener*, 291 S.C. 247, 251, 353 S.E.2d 147, 150 (Ct.App. 1987). South Carolina Code Ann. § 20-7-472 (Supp.2000), lists fifteen factors for the court to consider in equitably apportioning a marital estate. Fault or marital misconduct

affecting the parties' economic circumstances or contributing to the marital breakup is one factor to consider. S.C.Code Ann. § 20–7–472(2) (Supp.2000). The statute grants the family court discretion to decide what weight to assign various factors. On appeal, this court looks to the overall fairness of the apportionment, and it is irrelevant that this court might have weighed specific factors differently than the family court. *Johnson v. Johnson,* 296 S.C. 289, 300–01, 372 S.E.2d 107, 113 (Ct.App.1988).

In this case, we find the family court's award to Wife of 35% of the marital estate fair and equitable. Husband earned a substantially higher income than Wife, and Wife's exuberant charging habits and calculated attempts to conceal her spending from Husband negatively affected the parties' finances. Therefore, we cannot conclude the family court placed undue weight on Wife's financial misconduct in reaching its equitable apportionment decision. However, we agree with Wife that the family court erred in charging Cobb's one-half interest in the marital home to her as an asset.

Once a bankruptcy petition is filed, the bankruptcy court takes custody of all property in the debtor's possession. 28 U.S.C. § 133 (1993); *Tolk v. Weinsten,* 265 S.C. 546, 550, 220 S.E.2d 239, 241 (1975). Property owned by the debtor is in the bankruptcy court's jurisdiction, and "no other Court, and no person acting under any process from any other Court, can, without the permission of the Bankrupt[cy] Court, interfere with it." *Bratton v. Anderson,* 5 S.C. 504, 504 (1875) (quoting *In re Vogel,* 4 N.B.R. 427 (1869)). Because the bankruptcy court has exclusive jurisdiction over the debtor's assets, no action can be maintained in a state court to enjoin assets within the bankruptcy court's jurisdiction. *Southern v. Fisher,* 6 S.C. 345 (1875).

Similarly, other jurisdictions have held that because a bankruptcy court is competent to apportion a debtor's property, a bankruptcy court's judgments are not thereafter subject to collateral attack. *Kalb v. Feuerstein,* 308 U.S. 433, 439, 60 S.Ct. 343, 84 L.Ed. 370 (1940); *see, e.g., LaBarge v. Veirkant,* 240 B.R. 317, 321 (B.A.P. 8th Cir.1999); *In re Fernandez–Lopez,* 37 B.R. 664, 669 (B.A.P. 9th Cir.1984). Further, state courts cannot issue orders interfering with the bankruptcy

court's exclusive jurisdiction over the property of a bankrupt estate. *See In re Brown,* 734 F.2d 119, 124 (2d Cir.1984); *Missouri v. U.S. Bankruptcy Court,* 647 F.2d 768, 774 (8th Cir.1981).

We note that this case is distinguishable from those upholding the jurisdiction of the family court to equitably divide property titled in the name of a third party. *See In re Sexton,* 298 S.C. 359, 380 S.E.2d 832 (1989), *rev'd on other grounds,* 310 S.C. 501, 427 S.E.2d 665 (1993) (holding marital property titled in Husband's mother's name can be equitably divided by the family court because Husband transferred title to his mother immediately before filing for divorce to keep property out of divorce proceeding). Here, Cobb purchased a one-half interest in the marital home for valuable consideration, and neither Husband nor Wife had any equitable interest in it after Cobb's purchase except to the extent that Husband continued to maintain the property. The bankruptcy court recognized this in its order by stating that the bankruptcy trustee sold Cobb a one-half interest in the marital home "free and clear" of Husband's interest and that "Cobb purchased an undivided one-half interest in the marital home, not merely an equitable interest." However, Husband may still be entitled to bring an action to recover costs he incurred for the property. As the bankruptcy court stated: "[Husband] may be able to equalize and recoup the 'equities' by adjusting any disparity in costs and expenses he paid post-petition through any subsequent partition of this property in state court."

■ Accordingly, once Cobb's one-half interest in the marital home became involved in the bankruptcy proceeding, the family court had no jurisdiction to include this portion of the home within its equitable division scheme. The bankruptcy court concluded Cobb owns a one-half interest because he paid valuable consideration for it; therefore, the family court had no jurisdiction to award this half of the marital home to any party. Because we find only one-half of the marital home was a marital asset, it is necessary for the family court to reapportion the couple's assets and liabilities to effectuate a 65%/35% division. Thus, we reverse the equitable apportionment of the parties' assets and remand for redetermination in light of this decision.

### III. Attorney Fees

Wife also argues that the family court erred in ordering her to pay a portion of Husband's attorney fees.

At the time of trial Husband had incurred approximately $20,854 in attorney fees. The family court ordered Wife to pay $6,000 of Husband's attorney fees and costs. Because we have removed one-half of the marital home from the equitable distribution scheme and are remanding the equitable apportionment of the parties' assets, we remand the issue of attorney fees to the family court for redetermination in light of our decision.

For the foregoing reasons, the decision of the family court is

**AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.**

CURETON and SHULER, JJ., concur.