THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Douglas Jay
 Edwards, Respondent/Appellant
 v.
 Frances L.
 Edwards, Appellant/Respondent
 
 
 

Appeal From Greenville County
 Aphrodite K. Konduros, Family Court Judge
Unpublished Opinion No.  2008-UP-433
Submitted March 1, 2008  Filed August 4,
 2008
AFFIRMED IN PART AND HELD IN ABEYANCE IN PART

 
 
 
 William N. Epps, Jr., of Anderson, for Appellant-Respondent.
 Robert M. Rosenfeld, of Greenville, for Respondent-Appellant.
 
 
 

PER CURIAM:  In
 this domestic action, Frances Edwards (Wife) appeals the family courts order
 reducing alimony payments of Douglas
 Edwards (Husband).  Husband cross-appeals arguing the family
 court erred in finding him in contempt, imposing a contempt sanction, awarding
 Wife attorneys fees, and allowing evidence of previous testimony.  Husband
 also contends a state court lacks jurisdiction, outside the realm of alimony, to interfere with repayment
 of his debts pursuant to Chapter 13 bankruptcy.  We affirm the reduction in
 alimony and hold the remaining issues in abeyance due to Husbands bankruptcy
 action.[1] 
FACTS
Husband and Wife were married in 1966.  In 2000, Wife filed for
 divorce.  The family court granted Wife a divorce on the ground of adultery and
 awarded Wife $1,673 per month in regular periodic alimony.  Prior to the
 divorce hearing, Husband and Wife had reached a settlement agreement involving
 the equitable division of their real and personal property through two letters
 between counsel.  The family court approved
 this settlement agreement and merged and incorporated these letters by reference into the
 divorce order.  This agreement involved
 the equitable division of a family business, Central Catering and Café (the
 Café), and a business vehicle
 owned by the Café.  
After their divorce, Husband accepted a severance package and
 retired from his job with Michelin in 2002.  Thereafter, he began
 focusing entirely on the Café and wished to expand the business.  However,
 after losing a longtime lease, Husband began losing money in the Café. 
 Additionally, Arvidias Deli, an expansion restaurant Husband opened, failed a
 year after its opening.  Based on these events, Husband petitioned the family
 court for a reduction in his alimony obligation.  Wife counterclaimed, arguing
 Husbands changed circumstances did not warrant a reduction in his alimony
 obligation and sought immediate payment of all equitably divided marital
 property.  Additionally, Wife alleged Husband was in willful contempt of court
 for his failure to pay Wife her portion of their marital estate pursuant to the
 original divorce decree.  
On June 6, 2005, the family court issued an order reducing
 Husbands monthly alimony obligation from $1,673 to $400 based on his changed
 circumstances.  The family court also found Husband in contempt for failing to
 pay Wife her share of the marital property, Cobra benefits, and attorneys fees
 and costs pursuant to the original divorce decree.  The family court ordered
 Husband to pay Wife $34,411.77 within 30 days, and if he failed to pay, to
 serve 90 days in the Greenville County Detention Center.  Additionally, the
 family court ordered Husband to pay Wife $7,000 in attorneys fees which Wife
 incurred during the contempt case.  
Husband unsuccessfully sought a stay of the contempt order from
 the family court and this court.  He subsequently filed Chapter 13 bankruptcy. 
 The federal bankruptcy court established a payment schedule under which Husband
 would pay back his creditors, including paying debts he owed to Wife.  
STANDARD OF REVIEW
On
 appeal from a family court order, the appellate court has authority to correct
 errors of law and find facts in accordance with our own view of the
 preponderance of the evidence.  E.D.M. v. T.A.M., 307 S.C. 471, 473, 415
 S.E.2d 812, 814 (1992).  However, [q]uestions concerning alimony rest with the
 sound discretion of the [family] court, whose conclusions will not be disturbed
 absent a showing of abuse of discretion.  Kelley v. Kelley, 324 S.C.
 481, 485, 477 S.E.2d 727, 729 (Ct. App. 1996).  The family
 court abuses its discretion when factual findings are without evidentiary
 support or a ruling is based upon an error of law.  Smith v. Doe, 366
 S.C. 469, 474, 623 S.E.2d 370, 372 (2005).
LAW/ANALYSIS
I.  Wifes Appeal
A. 
 Modification of Alimony 
Wife argues Husband
 has not proved a substantial change in circumstances has occurred such that a
 reduction in alimony is warranted.  We disagree.  
The
 party seeking the change in alimony has the burden to prove an unforeseen
 change in circumstances warrants a modification.  Kelley v. Kelley, 324
 S.C. 481, 486, 477 S.E.2d 727, 729 (Ct. App. 1996).  Several considerations
 relevant to the initial determination of alimony may be applied in the
 modification context as well, including the parties standard of living during
 the marriage, each partys earning capacity, and the supporting spouses
 ability to continue to support the other spouse.  Penny v. Green, 357
 S.C. 583, 589, 594 S.E.2d 171, 174 (Ct. App. 2004).
The
 South Carolina Supreme Court has emphasized it, will closely scrutinize the
 facts of any case wherein a husband and father voluntarily changes employment
 so as to lessen his earning capacity . . . .  Camp v. Camp, 269 S.C.
 173, 174, 236 S.E.2d 814, 815 (1977).  The Camp court held, Where the
 husband has voluntarily relinquished a well-paying practice and has taken a
 position at a modest salary, the court may base the amount of alimony upon his
 capacity to earn money, or upon his prospective earnings.  269 S.C. at 175,
 236 S.E.2d at 815.  Recently, the South Carolina Supreme Court held the motive
 behind a reduction in income may be a factor when courts consider earning
 capacity.  Arnal v. Arnal, 371 S.C. 10, 13, 636 S.E.2d 864, 866 (2006). 
 The court held the party seeking to impute income to the other [party] need
 not establish a bad faith motivation to lower a support obligation in order to
 prove voluntary underemployment. The presence of bad faith is a factor in
 determining whether a [party] is voluntarily underemployed, but the lack of
 such bad faith does not preclude a finding of voluntary underemployment.[2]  Id.  
In
 the present case, the family court found Husband proved a substantial change in
 circumstances warranting a reduction in alimony from $1,673 to $400 per month. 
 Husbands substantial change in circumstances occurred after he terminated his
 employment with Michelin at the age of fifty-eight.  In September of 2001,
 Michelin sought to reduce its workforce and expenses.  Specifically, Michelin
 sought to reduce $275 million from their budget over a three-year span. 
 Husband testified his best option was to take an early retirement package
 Michelin offered and retire in 2002.  Husband made this decision based on his
 knowledge of events taking place at Michelin in addition to events happening in
 his own department.  Husband was making $54,000 per year at the time of the
 divorce.  However, the family court attributed this salary to Husbands length
 of service at Michelin, rather than his earning capacity in the job market. 
 The family court stated Husband was under qualified to earn what he was
 earning, but for his years of service.  
In
 addition to his severance package of eleven months pay, Husband received
 retirement benefits and sought to increase profits of the Café, his existing
 business.  Husband also wished to expand this business by opening a deli. 
 After retiring from Michelin, unforeseen events caused Husbands income to
 diminish.  First, the Café was forced to relocate because Husband lost his
 lease.  Under the Cafés new lease, monthly rent increased from $200 to
 $1,251.  In addition, Husbands restaurant expansion, the Arvidia Deli, failed
 a year after opening.  We note Husband was legitimately concerned that he may
 have been fired if he had rejected Michelins severance package.  Furthermore,
 Husbands loss of the Cafés lease and his unsuccessful business venture with
 the Deli were all unforeseen and unanticipated changes in market conditions.  
Based
 on these unforeseen changed circumstances, we find the family court did not
 abuse its discretion in reducing Husbands alimony obligation based on the
 above evidence and its finding that Husband made an excellent effort to
 supplement his income.  Accordingly, we affirm the family courts decision to
 reduce alimony.  
B. 
 Amount of Alimony Reduction
Alternatively, Wife
 argues the family court erred in determining the amount of Husbands reduced
 alimony obligation.  We disagree.
The family court
 initially ordered Husband to pay $1,673 per month in alimony to Wife after
 finding Husband earned $4,516 in gross monthly income from his job with
 Michelin, with a net monthly income of $2,915 after deductions.  Additionally
 in the divorce decree, the family court found Husband earned a profit of
 $29,884.55 from the Café during the first ten months of 2000.  At that time,
 the family court considered Husbands two potential sources of income in its
 determination of alimony payments.  
In
 considering Husbands request to decrease his alimony obligation, the family
 court recognized he is no longer receiving $4,516.00 in gross monthly income from
 his job with Michelin.  Additionally, the family court recognized that a
 business [Husband] established, known as Arvidias [D]eli, has now failed and
 he no longer has sufficient funds with which to pay his alimony obligation. 
 Consequently, Husband derives his sole source of income from the profit of the
 Café.  
The
 Cafés 10 month income statement showed a net income of $21,076.14 as of
 October 31, 2004.  However, we note the Cafés 11-month net income statement as
 of November 30, 2003, showed the business was operating at a net loss of
 $12,263.93 for 2003, and the October 2002 income statement showed the business
 producing a mere profit of $1,032 for 10 months in 2002.  In their testimony,
 Husband and his accountant, Gerald Saunders, corroborated these figures. 
 Moreover, net income from the Café pays off business loans and lines of credit
 and is used to acquire business assets; the net income does not all go directly
 to Husband as a salary.  Rather, Husband may take distributions for personal
 expenses.  Husband testified he had drawn only $3,578.19 from the Café during
 the first six months of 2004.  Based on this distribution, Husband estimated
 $596 was his monthly salary from the Café.  Saunders later testified Husbands
 annual distributions were $9,150 in 2002; $1,000 in 2003; and $6,785 in 2004. 
 Though Husbands tax returns are not included as part of the trial record,
 Saunders also testified $16,090.92 was Husbands taxable income in 2004.  The
 cash flow statement for the Café showed $16,090.92 as income per tax return
 in 2004, but these figures were negative for 2002 and 2003.  
Due
 to the nature of Husbands business, it is difficult to determine his exact
 annual salary.  Instead, Husband withdraws his income from the Café based on
 available income after meeting debt obligations and making necessary business
 purchases.  Moreover, the family court found nothing improper in [Husbands]
 record keeping or expenditures, nor did the family court believe Husband was
 hiding personal expenditures behind the Café or that he was living out of
 it.  We additionally note Husband has drawn against his retirement account for
 living expenses and to make loan payments.  
While
 we note the family court drastically decreased Wifes alimony, after examining
 the record, we find the amount she receives is in line with Husbands decreased
 earning capacity.  Additionally, we note Husbands decreased income is partly
 attributable to unforeseen changes in market conditions.  Therefore, if a
 situation arises where Husbands earnings increase, Wife has the ability to
 petition the family court for an increase in her monthly alimony based on
 changed circumstances.  However, in the meantime, we find the family court did
 not abuse its discretion in reducing the amount of alimony Husband owes and
 affirm the family courts revised calculation of alimony.  
II.  Husbands Appeal
Husband
 argues the federal bankruptcy law stays enforcement of the family courts
 orders regarding the payment of Wifes division of the marital property
 relating to 1) the Café; 2) Dodge automobile; 3) Wifes award for past due
 COBRA payments; 4) past due attorneys fees; and 5) attorneys fees for the
 present action.  We agree.  
The filing of
 a petition for bankruptcy operates as an automatic stay of most state court
 proceedings.[3]  11 U.S.C.A. § 362(a) (West 2004 & Supp. 2008). 
 Once a bankruptcy petition is filed, the bankruptcy court takes custody of all
 property in the debtors possession.  Bragg v. Bragg, 347 S.C. 16, 24,
 553 S.E.2d 251, 255 (Ct. App. 2001).  Upon such a filing, the debtors property
 is under the jurisdiction of the bankruptcy court, and no other Court, and no
 person acting under any process from any other Court, can, without the
 permission of the Bankrupt[cy] Court, interfere with it. Bragg, 347
 S.C. at 24, 553 S.E.2d at 255 (internal citations omitted).  Due to the
 bankruptcy courts exclusive jurisdiction over Husbands debts, no action can
 be maintained in a state court to enjoin assets within the bankruptcy courts
 jurisdiction, nor can a state court issue an order that would interfere with
 the jurisdiction of the bankruptcy court.  Id. at 24, 553 S.E.2d at
 255-56. 
On
 September 23, 2005, Husband filed a petition for bankruptcy in the United
 States Bankruptcy Court for the District of South Carolina.  Thereafter, on
 March 14, 2006, the bankruptcy court issued its order confirming the Chapter 13
 Plan and resolving motions.  In the Chapter 13 Plan, Wife was listed as a
 priority creditor.  The state courts no longer have jurisdiction over the debts
 owed Wife.  Accordingly, Husbands appeal is held in abeyance.  
CONCLUSION
Accordingly, we
 affirm the family courts decision to reduce Husbands alimony obligation due
 to a substantial and material change in his circumstances and hold the
 remaining issues in abeyance.  
AFFIRMED IN PART
 AND HELD IN ABEYANCE IN PART.
HUFF, KITTREDGE,
 and WILLIAMS, JJ. concur.  

[1] We decide this case without oral argument
 pursuant to Rule 215, SCACR.
[2] Although the facts in Arnal involved reduction
 of child support payments, because voluntary underemployment occurs in the
 alimony arena as well, we find the situation analogous to alimony.  
[3] An action for the establishment or modification of
 an order for domestic support obligations is not subject to the bankruptcy
 automatic stay.  11 U.S.C.A. § 362(b)(2)(A)(ii) (West Supp. 2008).