0871

Jakobus A. BUNGENER, Respondent v. Emmy Schlutz BUNGENER, Appellant.

(353 S. E. (2d) 147)

Court of Appeals

*Charles E. Carpenter, Jr.*, of *Richardson, Plowden, Grier & Howser*, Columbia, *for appellant.*

*Thomas Emmet Walsh*, of *Gaines & Walsh*, Spartanburg, *for respondent.*

Heard Sept. 18, 1986.

Decided Feb. 2, 1987.

BELL, Judge:

In July 1984, Jakobus Bungener commenced this action for divorce against his wife, Emmy, on the ground of one year's separation. His complaint recited that on July 30, 1981, he and his wife entered into a separation agreement which provided for the division of all their property. Mrs. Bungener denied the couple had lived apart for a year and asked for a divorce based on Mr. Bungener's adultery. Mrs. Bungener also asked for permanent alimony and attorney's fees. Mr. Bungener responded that if permanent alimony were awarded, the separation agreement should be set aside and the court should order its own division of the marital property. The family court granted the divorce, but rejected the settlement agreement as unfair to both parties. The court divided the couple's property and awarded Mrs. Bungener permanent alimony of one thousand dollars per month and four hundred dollars in attorney's fees. Mrs. Bungener appeals. We affirm.

The parties married in 1956. They have two children, both of whom were emancipated at the time of the hearing. Mr. and Mrs. Bungener lived together in North Carolina until 1980. In June of that year, Mr. Bungener moved to Spartanburg, South Carolina. According to his testimony, that event marked the end of the marriage. Mrs. Bungener testified, however, her husband returned to their home on weekends and they continued to live as husband and wife until 1981.

The couple attempted a reconciliation for six months in 1982, but were unsuccessful. In March 1984, Mr. Bungener moved in with Mrs. Jetsy Witt and her two children, with whom he continues to live.

In July 1981, the parties executed a separation agreement, which was supplemented by an addendum in January 1982. The agreement stipulated the parties had agreed to separate as of July 15, 1981, and from that time forward each would be entitled "to live with parties of his or her own choosing without interference from the other." The document also provided for the distribution of all the Bungeners' assets.

The family court judge concluded that although the agreement was voluntary, it was not fair to either party. Accordingly, the judge divided the couple's assets into nonmarital and marital property and apportioned the latter between the parties.

Mrs. Bungener received as marital property a forty percent interest in the marital residence, all the household furnishings, eight thousand dollars in cash, and three automobiles. Her share was somewhere between forty and fifty percent of the total marital property. Mr. Bungener was awarded a sixty percent interest in the marital residence, a lot in Wilkes County, North Carolina, a motor boat, and twelve thousand dollars in cash.

The family court judge found Mr. Bungener's individual property consisted of an inheritance from his parents, a thirty-four foot Cris Craft boat, a boat slip, a twenty-five percent interest in a North Myrtle Beach condominium, an option to purchase fifteen percent of Achem Corp., and a twenty-five percent interest in D & B Embroidery, Inc., a company operated by his wife. Mrs. Bungener retained as separate property her twenty-five percent interest in D & B Embroidery and a lot near Tryon, North Carolina. The judge further ordered Mr. Bungener to pay alimony of one thousand dollars per month and four hundred dollars in attorney's fees.

Mrs. Bungener appeals the sufficiency of the divorce decree's findings, the identification and division of marital property, and the amount of alimony and attorney's fees.

## I.

First, Mrs. Bungener attacks the family court's order for failure to comply with Rule 27(C), Rules of Practice for the Family Courts of South Carolina. She argues the judge made no specific findings of fact on the ground for the divorce, the reason for rejecting the Bungeners' separation agreement, or the identification of marital and nonmarital property. We find these contentions are without merit.

The order specifically finds the parties lived separate and apart for the statutory one year period, and this was no doubt the ground for granting the divorce. The judge found Mr. Bungener's cohabitation with Mrs. Witt did not commence until April 1984 and did not contribute to the break-up of the marriage.

On the matter of the separation agreement, the order clearly explains the judge's finding that it was unfair to both parties. He specifically found Mrs. Bungener required a permanent alimony award and Mr. Bungener was entitled to a larger share of the property than was allotted under the agreement.

As to identification of the marital estate, the order sets forth the various items which the court found to be marital property or separate property. The record provides a reasonable evidentiary basis for us to review these findings.

## II.

Mrs. Bungener contends the family court erred in identifying and dividing the marital assets. We find no reversible error.

Mrs. Bungener argues the Cris Craft, the condominium interest, the stock option, the interest in the real estate, and the boat slip all should have been identified as marital property.

The condominium and the boat slip were both purchased in August 1984, three years after the Bungeners executed a formal separation agreement and more than a year after the filing of the complaint. Our Supreme Court has held that property of the marriage is to be valued as of the date of separation. *Anderson v. Anderson*, 282 S. C. 162, 318 S. E. (2d) 566 (1984). We conclude the

date of separation should also be determinative for identifying marital property, at least when there is no showing that later acquired property was purchased with marital funds or received as compensation for work performed prior to separation.[1] We hold, therefore, that the family court correctly identified the condominium and boat slip as Mr. Bungener's separate property.

The record does not reveal precisely when Mr. Bungener acquired the Cris Craft boat or his interest in the Achem real estate. However, the parties' 1981 separation agreement does not mention either property, and it may well be that they were acquired after separation. Mrs. Bungener has not cited any evidence inconsistent with the family court's finding that these two items were Mr. Bungener's separate property. The burden is on her to demonstrate the trial court committed reversible error. *Cox v. Cox*, 290 S. C. 246, 349 S. E. (2d) 92 (Ct. App. 1986).

The option to purchase fifteen percent of the stock in Achem Corp. was acquired in 1980, prior to the separation, and was, therefore, property of the marriage. Under the option agreement, Mr. Bungener would receive the stock only if he paid a total of seventy-four thousand dollars during the option's term. The option was to expire at the close of 1985. The record contains no evidence whatsoever of the option's fair market value or of whether the option was alienable. At the time of the hearing the option had not been exercised and it was uncertain whether Mr. Bungener could pay the entire seventy-four thousand dollars before the option expired. For this Court to reverse the family court, the record must show not only error, but also prejudice. *Cox v. Cox, supra.* Without evidence of the option's value, we cannot conclude Mrs. Bungener was harmed by the family court's disposition of the stock option.

The apportionment of the marital estate is a matter left to the sound discretion of the family court. *Rampey v. Rampey*, 286 S. C. 153, 332 S. E. (2d) 213 (Ct. App. 1985). Mrs. Bungener made almost no direct contri-

---

[1] *Cf.* Section 20-7-473(2)(b), Code of Laws of South Carolina, 1976, as amended (effective June 13, 1986), providing that property acquired by either spouse after the signing of a marital settlement agreement is non-marital property.

butions to the marital estate. Mr. Bungener, with the assistance of his mother, contributed almost all the material support for the family. Mrs. Bungener contributed her services as a homemaker and mother throughout the marriage. She received between forty and fifty percent of the marital property identified by the family court. On the record before us this was an eminently fair apportionment, well within the trial judge's discretion.

### III.

Finally, Mrs. Bungener complains the amount of the alimony and attorney's fees was too low.

The award of alimony rests in the sound discretion of the trial judge. *Smith v. Smith*, 264 S. C. 624, 216 S. E. (2d) 541 (1975). The family court judge found Mrs. Bungener would be able to secure employment and provide at least part of her own support. Mrs. Bungener's own financial declaration set her monthly expenses at $1,301.22, which will no doubt be reduced when the marital home is sold and she is relieved of its expenses. According to Mr. Bungener's declaration, he has a net monthly income of $2,899.76 and expenses of $2,556.99. Under these circumstances, we find no abuse of discretion in the alimony award of one thousand dollars per month.

We have no basis at all for reviewing the award of attorney's fees as Mrs. Bungener has not provided any evidence of her legal expenses.

For these reasons, we affirm the alimony and attorney's fees.

Affirmed.

CURETON and GOOLSBY, JJ., concur.