569 S.E.2d 393

**Elaine (Nutting) GREENE, Appellant,**

v.

**Jackson Edward GREENE, individually; and Jackson Edward Greene, Jr., and Walter Allan Greene, both individually and as Trustees of the Jackson Edward Greene, Sr., Irrevocable Trust, Respondents.**

No. 3540.

Court of Appeals of South Carolina.

Heard June 4, 2002.
Decided Aug. 5, 2002.
Rehearing Denied Sept. 18, 2002.

330

332

Timothy E. Madden, of Greenville, for appellant.

Thomas W. Traxler and Katherine H. Tiffany, of Greenville, for respondents.

HEARN, Chief Judge:

In this divorce action, Elaine (Nutting) Greene (Wife) appeals several aspects of the family court's order of equitable distribution. We affirm in part, reverse in part, modify in part, and remand.

## FACTS

Wife and Jackson Edward Greene (Husband) were married on December 23, 1988 and separated on March 17, 1998. At the time of the marriage, Husband was retired and owned substantial property, including a home situated on a 17–acre tract where the parties lived during the marriage and a separate 135–acre tract. Wife's premarital property consisted of $16,000 in proceeds from the sale of her former home.

During the marriage, the parties operated a farm and horse business on the 17 acres surrounding the home. Both parties participated in giving riding lessons and boarding, breeding, training, buying, selling, and leasing horses. Proceeds derived from the business were maintained in a joint bank account and applied toward the expenses associated with the business. The business, however, operated at a loss, and Husband occasionally contributed personal funds to cover company expenses.

Throughout the marriage, the parties maintained separate bank accounts. Husband's accounts were funded primarily with his premarital retirement and Social Security income, and proceeds from the sale of his premarital real estate. Husband used his retirement income to pay most of the parties' living expenses, and used other funds to pay for utilities, real estate taxes, insurance premiums, and home repairs. Wife's separate accounts were funded with the proceeds from the sale of her home and income from her employment as a teacher. She used money from her accounts to acquire numerous investment accounts and four parcels of real estate.

Early in the marriage, the parties began repairing and improving the home. Wife cleaned the home and performed minor repair work. In 1996, a fire destroyed much of the home. The insurance proceeds, approximately $171,000, were deposited into Husband's account and used to pay for restoration and renovations on the marital residence.

At some point during the marriage, Wife became romantically involved with a neighbor. She instituted this action against Husband seeking an order of separate support and maintenance and ancillary relief. Husband answered and counterclaimed, seeking, among other things, a divorce on the ground of adultery and equitable distribution of marital property.

The family court awarded Husband a divorce on the ground of adultery; identified, valued and equally apportioned the parties' marital property; awarded Wife a special equity in the home; and awarded Husband $12,195 in attorney fees and costs.

## DISCUSSION

In appeals from the family court, this court has the authority to find the facts in accordance with its view of the preponderance of the evidence. *Rutherford v. Rutherford,* 307 S.C. 199, 204, 414 S.E.2d 157, 160 (1992). This broad scope of review does not, however, require us to disregard the findings of the family court. *Stevenson v. Stevenson,* 276 S.C. 475, 477, 279 S.E.2d 616, 617 (1981). Neither are we required to ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Cherry v. Thomasson,* 276 S.C. 524, 525, 280 S.E.2d 541, 541 (1981).

### I. Identification of Marital Property

#### A. Property Titled to Wife

Wife first asserts the family court erred in identifying two parcels of property, 22 North Acres and 4 Kestrel Court, as marital property. We agree.

The family court found that both parcels of real estate were marital because (1) the parties stipulated the properties were

marital in nature; (2) Wife used marital funds to acquire a contractual interest in the properties prior to the date of filing; and (3) Wife used other marital funds to close on the purchase of the properties. Accordingly, the family court assigned equity values to the properties and charged the full amount against Wife's share of the marital estate.

The family court determined that the parties stipulated to the marital nature of the properties based on Wife's inclusion of the properties on the marital assets addendum of her financial declaration submitted to the family court. Our supreme court has defined a stipulation as:

> an agreement, admission or concession made in judicial proceedings by the parties thereto or their attorneys. Stipulations, of course, are binding upon those who make them. A stipulation is an agreement, an understanding. The court must construe it like a contract, i.e., interpret it in a manner consistent with the parties' intentions.

*Porter v. S.C. Pub. Serv. Comm'n,* 333 S.C. 12, 30, 507 S.E.2d 328, 337 (1998) (internal citations and quotations omitted). The purpose of a stipulation is to "obviate need for proof or to narrow [the] range of litigable issues." *Black's Law Dictionary* 1415 (6th ed.1990).

Our reading of the record does not convince us Wife intended to stipulate that the properties were marital simply because she included them on the marital property addendum of her financial declaration. Rather, we accept Wife's explanation that she included them simply to disclose their existence to the court. This explanation is consistent with Wife's position throughout her testimony that this was her separate property.

Furthermore, we find the date of acquisition of these properties significant to our determination that they are non-marital. Marital property is generally defined as "all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation...." S.C.Code Ann. § 20-7-473 (Supp.2001). Although Wife used $2,000 in marital funds to pay earnest money deposits on the property prior to the date of filing, legal title to the properties did not vest until after the date marital litigation was commenced. Be-

cause Wife had no ownership interest in the properties until after the date of filing, we find the disputed properties were improperly classified as marital. Accordingly, we reverse the family court's finding that 22 North Acres and 4 Kestrel Court were marital property.

Moreover, we modify the family court's order to reflect the $10,000 loan from Wife's father for the down payment for 4 Kestrel Court. Although the family court "recognized a contribution on Mrs. Greene's behalf in the amount of $10,000 in the overall equitable division of the marital estate," the family court nonetheless included the full equitable value of 4 Kestrel Court in valuing the marital estate for equitable distribution. This was error. We find the $10,000 Wife borrowed from her father for the down payment on 4 Kestrel Court was her separate property. Accordingly, we modify the family court's order to subtract $10,000 from the assigned value of the Kestrel Court property for purposes of equitable distribution.

Husband may, however, be entitled to a special equity in 22 North Acres. Although nonmarital property is not subject to equitable distribution as such, if one spouse uses marital funds to purchase property after the commencement of marital litigation, the family court may properly award the other spouse a special equity in the property. *Cannon v. Cannon,* 321 S.C. 44, 50–51, 467 S.E.2d 132, 136 (Ct.App.1996). Wife testified she used $8,000 from her checking account to make a down payment on this property. This was clearly marital money, as the checking account was funded with income she earned teaching during the marriage. Thus, Husband would be entitled to a special equity in the property. However, Wife claims Husband's "Division of Assets" exhibit presented at trial listed the equitable value of the property at $8,000 without subtracting this amount from Wife's checking account. The family court accepted Husband's valuation of the checking account, which would have the effect of counting the $8,000 twice for purposes of equitable distribution. Because we cannot discern whether the $8,000 was subtracted from the checking account prior to Husband's listing of the value of that account on his "Division of Assets" list, we

remand this issue to the family court to make that determination.

 Furthermore, we hold Wife's share in the marital estate must be reduced by $2,000 in order to account for the expenditure of marital funds to pay the earnest money deposits on both properties. On remand, the family court is directed to reapportion the marital estate to account for this partial modification, and make a determination as to whether the $8,000 from Wife's checking account for 22 North Acres has been counted twice in the equitable distribution.

### B. Property Titled in Husband's Name

Wife argues the marital home and surrounding acreage were transmuted into marital property and should have been subject to equitable distribution, or alternatively, that she is entitled to a greater than ten percent special equity in the home and surrounding seventeen acres. We disagree.

 Generally, property acquired by either party prior to the marriage is nonmarital property. S.C.Code Ann. § 20–70473(2) (Supp.2001). In certain circumstances, nonmarital property may be transmuted into marital property if: (1) it becomes so commingled with marital property as to be untraceable; (2) it is jointly titled; or (3) it is utilized by the parties in support of the marriage or in some other manner so as to evidence an intent by the parties to make it marital property. *Pool v. Pool,* 321 S.C. 84, 88, 467 S.E.2d 753, 756 (Ct.App.1996), *aff'd as modified,* 329 S.C. 324, 494 S.E.2d 820 (1998). Transmutation is, however, a matter of intent to be gleaned from the facts of each case. The spouse claiming transmutation bears the burden of producing objective evidence showing that, during the marriage, the parties themselves regarded the property as the common property of the marriage. *Id.* The mere use of separate property to support the marriage, without some additional evidence of intent to treat the property as marital, is not sufficient to establish transmutation. *Id.*

 Here, there is no question that the parties used Husband's premarital home and surrounding property in support of the marriage. They lived in the home and operated a

horse business and farm on the surrounding property. However, the record clearly indicates Husband deliberately kept his premarital property separate and distinct from their marital property. Husband maintained a joint account with Wife and separate accounts funded with his separate property; he used money from his separate accounts to maintain the home and pay the homeowner's insurance premiums. He also subsidized the horse business and farm with money from his separate accounts. In our view, these efforts are evidence of Husband's intent to treat his premarital home and other premarital properties as nonmarital property. Therefore, we find the family court properly determined that these properties were nonmarital and not subject to equitable distribution.

■ We also reject Wife's argument that she is entitled to a greater special equity in the marital home and surrounding seventeen acres. Although Husband maintained there was no increase in the value of his home and farm acreage during the marriage, the family court found Wife's indirect contributions resulted in a ten percent increase in value of the property and awarded Wife $28,200. To the extent Wife advanced a contrary position at trial, we find the family court acted within its discretion in assigning more weight to Husband's testimony, particularly in light of the family court's express determination that Husband was a more credible witness than Wife. *See Bragg v. Bragg*, 347 S.C. 16, 21–22, 553 S.E.2d 251, 254 (Ct.App.2001) (stating this court is not required to ignore the trial judge who saw and heard the witnesses and was in a better position to evaluate their credibility and assign comparative weight to their testimony).

## II. Post-filing Rental Income

■ Wife next contends the family court erred in reducing her share in the marital estate by the amount of rental income she received and disposed of after the date marital litigation was commenced. We agree.

The family court found that during the course of litigation, Wife received approximately $37,525 in rental income, including the North Acres property. In charging this income against Wife's share in the marital estate, the family court reduced the amount of income by the amount of income taxes

associated with the property, and ultimately determined Wife's share should be reduced by $24,391.

■ The family court properly reduced Wife's share in the marital estate by one-half of the amount of post-filing rental income derived from the parties' marital property; however, rental income derived from nonmarital property is nonmarital in nature. *Murray v. Murray*, 312 S.C. 154, 161, 439 S.E.2d 312, 317 (Ct.App.1993). In light of our holding regarding the nonmarital nature of the North Acres property, and in the absence of any evidence that Husband directly or indirectly contributed to the acquisition of the rental income, Husband is not entitled to any credit for post-filing rental income attributable to this property.[1] On remand, the family court is directed to reduce the amount of the charge against Wife's share in the marital estate for post-filing rental income by the amount of rental income attributable to the North Acres property.

### III. Equitable Apportionment

Wife argues the family court erred in failing to award her a greater share in the marital estate. We disagree.

■ The apportionment of marital property will not be disturbed on appeal absent an abuse of discretion. *Bungener v. Bungener*, 291 S.C. 247, 251, 353 S.E.2d 147, 150 (Ct.App. 1987). South Carolina Code Ann. § 20–7–472 (Supp.2001) lists fifteen factors for the family court to consider in equitably apportioning a marital estate. The statute grants the family court discretion to decide what weight to assign various factors. On appeal, this court looks to the overall fairness of the apportionment and it is irrelevant that this court might have weighed specific factors differently than the family court. *Johnson v. Johnson*, 296 S.C. 289, 300–01, 372 S.E.2d 107, 113 (Ct.App.1988).

■ Here, the family court expressly considered the factors relevant to making an award of equitable apportionment.

---

1. Wife testified that Husband failed to contribute to the acquisition of these properties and Husband did not contradict the testimony. As noted above, Husband is entitled to a special equity in the *value* of the property due to Wife's use of marital funds to purchase the property. *Accord Cannon*, 321 S.C. at 50–51, 467 S.E.2d at 136.

We find the facts and circumstances of this case, including but in no way limited to Wife's marital misconduct, render the equal division of marital assets fair and reasonable. Therefore, we find no error.

## IV. Scheme of Equitable Distribution

Finally, Wife asserts the family court erred in awarding Husband a particular piece of marital property at a value reduced by the amount of her contribution of nonmarital funds for the purchase of the property. We agree.

■ The family court has wide discretion in determining how marital property is to be distributed. *Murphy v. Murphy*, 319 S.C. 324, 329, 461 S.E.2d 39, 41–42 (1995). In so doing, it "may use any reasonable means to divide the property equitably...." *Id.* Accordingly, the court's apportionment of marital property will not be disturbed absent an abuse of discretion. *Id.*

■ The family court found that the parties' Rose Garden property had an equitable value of $50,500 and further found that $20,000 of the equity was attributable to Wife's contribution of premarital funds as a down payment on the property. Accordingly, the family court assigned the property a value of $30,500 for purposes of equitable distribution. However, the court awarded the Rose Garden property to Husband with a value of $30,500, giving Wife the option of retaining the property by paying Husband $30,500 within 30 days of the final order. We find this was error. Wife was entitled to a $20,000 credit for her nonmarital contribution toward the acquisition of the property. However, by awarding the property to Husband at the reduced value and requiring Wife to purchase it from him, the family court effectively gave Husband the full benefit of a credit intended to benefit Wife. As such, we remand this issue to the family court to revalue and/or redistribute the Rose Garden property in a manner which properly accounts for Wife's contribution of nonmarital assets to its acquisition.

For the foregoing reasons, the decision of the family court is

**AFFIRMED IN PART, MODIFIED IN PART, REVERSED & REMANDED IN PART.**

HUFF and HOWARD, JJ., concur.