THIS OPINION HAS NO PRECEDENTIAL 
 VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT 
 AS PROVIDED BY RULE 239(d)(2), SCACR. 
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
David Thomas Walters,       
Appellant,
 
 
 

v.

 
 
 
Margaret Smith Walters,       
Respondent.
 
 
 

Appeal From Richland County
Walter B. Brown, Jr., Family Court 
 Judge

Unpublished Opinion No. 2004-UP-153
Submitted November 3, 2003  Filed March 
 9, 2004

AFFIRMED

 
 
 
Walter B. Todd and J. Derrick Jackson, both of Columbia, for Appellant.
Gene Trotter, of Columbia, for Respondent.
 
 
 

PER CURIAM:  In this domestic action, 
 David Thomas Walters (Husband) sued Margaret Smith Walters (Wife) for divorce 
 and equitable distribution of marital property.  The family court granted the 
 divorce, divided the marital property, and awarded Wife alimony and attorneys 
 fees.  Husband appeals, arguing the alimony award was excessive, the classification 
 of certain personal property as non-marital was erroneous, the modification 
 of the property distribution was made sua sponte, and the award of attorneys 
 fees to Wife was improper.  We affirm.
FACTUAL/PROCEDURAL BACKGROUND
Husband and Wife were married in July 1976.  They 
 have two children, an emancipated son and a daughter in her final year of college.  

In July 2000, Husband filed an action for divorce 
 and equitable distribution of marital property.  The court issued a temporary 
 order, requiring Husband to pay alimony to Wife.  In March 2001, Husband was 
 held in contempt of the courts order requiring payment of temporary alimony 
 to Wife.  
In March 2002, the family court issued a divorce 
 decree imputing $150,000 annual income to Husband, ordering Husband to pay $3,000 
 per month permanent periodic alimony and $10,000 of Wifes attorneys fees, 
 and dividing the marital estate.  Both Husband and Wife filed timely motions 
 to reconsider pursuant to Rule 59(e), South Carolina Rules of Civil Procedure.  
 The family court denied Husbands request for re-hearing on the issues of imputed 
 income, alimony, and attorneys fees.  However, the family court altered the 
 distribution of property to award Wife a linen press initially granted to Husband. [1]   Husband appeals.      
STANDARD OF REVIEW
[A]n appellate court reviewing a family court 
 order may find facts in accordance with its own view of the preponderance of 
 the evidence.  Sharps v. Sharps, 342 S.C. 71, 79, 535 S.E.2d 913, 917 
 (2000).  However, this broad scope of review does not require an appellate court 
 to disregard the findings of the family court, who saw and heard the witnesses 
 and was in a better position to evaluate credibility and assign comparative 
 weight to the testimony.  Greene v. Greene, 351 S.C. 329, 335, 569 S.E.2d 
 393, 397 (Ct. App. 2002).  [W]hen an appellate court chooses to find facts 
 in accordance with its own view of the evidence, the court must state distinctly 
 its findings of fact and the reason for its decision.  Dearybury v. Dearybury, 
 351 S.C. 278, 283, 569 S.E.2d 367, 369 (2002).
LAW/ANALYSIS
I.          Alimony
Husband argues the family courts 
 award to Wife of $3,000 per month permanent periodic alimony was excessive because: 
 1) the court improperly imputed income to Husband; 2) it was based on Wifes 
 inflated expenses; 3) it was based on a lifestyle neither party could afford; 
 and 4) it serves as a disincentive for Wife to improve her employment.  We disagree.
An award of alimony rests within the sound discretion 
 of the family court and will not be disturbed absent an abuse of discretion.  
 Allen v. Allen, 347 S.C. 177, 183-84, 554 S.E.2d 421, 424 (Ct. App. 
 2001).  An abuse of discretion occurs when the court is controlled by some 
 error of law or where the order, based upon factual findings, is without evidentiary 
 support.  Kelley v. Kelley, 324 S.C. 481, 485, 477 S.E.2d 727, 729 (Ct. 
 App. 1996).  
Alimony is a substitute for the support which is 
 normally incident to the marital relationship.  Nienow v. Nienow, 268 
 S.C. 161, 171, 232 S.E.2d 504, 510 (1977).  Ordinarily, the purpose of alimony 
 is to place the supported spouse, as nearly as practical, in the position of 
 support . . . enjoyed during the marriage.  Johnson v. Johnson­, 296 
 S.C. 289, 300, 372 S.E.2d 107, 113 (Ct. App. 1988).  However, alimony should 
 not serve as a disincentive for a spouse to improve his or her employment potential 
 or to dissuade the spouse from providing, to the extent possible, for his or 
 her own support.  Id. at 303, 372 S.E.2d at 115.     
In determining an alimony award, the family court must consider the following 
 factors: (1) duration of the marriage; (2) physical and emotional health of 
 the parties; (3) educational background of the parties; (4) employment history 
 and earning potential of the parties; (5) standard of living established during 
 the marriage; (6) current and reasonably anticipated earnings of the parties; 
 (7) current and reasonably anticipated expenses of the parties; (8) equitable 
 apportionment; (9) custody of children; (10) marital misconduct or fault; (11) 
 tax consequences; (12) prior support obligations; and (13) any other factors 
 the court considers relevant.  S.C. Code Ann. § 20-3-130(C) (Supp. 2002).  No 
 one factor is considered dispositive.  Lide v. Lide, 277 S.C. 155, 157, 
 283 S.E.2d 832, 833 (1981).  
A.          Imputed Income
Husband argues the family court erred by imputing 
 $150,000 annual income to him.  We disagree.
Courts will closely scrutinize the facts of any 
 case wherein a    husband . . . voluntarily changes employment so as to lessen 
 his earning capacity and, in turn, his ability to pay alimony . . . .  Camp 
 v. Camp, 269 S.C. 173, 174, 236 S.E.2d 814, 815 (1977).  [I]f the obligor 
 spouse has the ability to earn more income than he is in fact earning, the court 
 may impute income according to what he could earn by using his or her best efforts 
 to gain employment equal to his capabilities, and an award of alimony based 
 on such imputation may be a proper exercise of discretion even if it exhausts 
 the obligor spouses actual income.  
Dixon v. Dixon, 334 S.C. 222, 240, 512 S.E.2d 539, 548 
 (Ct. App. 1999). When considering actual income versus earning capacity, the 
 family courts responsibility is to closely examine the payors good faith and 
 reasonable explanation for the decreased income.  Kelley, 324 S.C. at 
 489, 477 S.E.2d at 731.  
During the marriage, Husband and Wife were joint 
 owners of a family business, the Walters Company.  Husband is also a fifty-percent 
 owner of Carolina Service Group, but reported he does not receive any income 
 from this business.  However, the family court found Husbands testimony concerning 
 his income was not credible.
Husband was employed by the Walters Company at 
 the time the divorce action was filed.  For purposes of the temporary hearing, 
 Husband reported his income as $16,045 per month.  Conversely, at trial his 
 financial declaration indicated his income was only $4,418 per month.  Husband 
 testified his income decreased because the Walters Company lost an account that 
 constituted sixty-percent of the companys income.  In his cross-examination 
 testimony, however, Husband stated the business had not lost any accounts and 
 suffered no adverse conditions other than the divorce and the effects from the 
 attacks on September 11, 2001.  
We conclude the discrepancies in Husbands testimony 
 regarding his income and the financial standing of the Walters Company, coupled 
 with his inability to provide a reasonable explanation for his reported decrease 
 in income, support the family courts determination that Husbands testimony 
 was not credible. [2]   Therefore, 
 we agree with the decision of the family court to disregard Husbands asserted 
 decrease in income and to impute income to him consistent with his historical 
 earnings.  See S.C. Code Ann. §§ 20-3-130(C)(4) & 20-3-130(C)(6) 
 (Supp. 2002) (requiring family court to consider the employment history and 
 earning potential of each spouse and the current and reasonably 
 anticipated earnings of both spouses when 
 awarding alimony) (emphasis added). 
Reviewing the five-year period immediately prior 
 to separation, [3] the family 
 court found the Walters Company income averaged $183,000, 
 [4] and imputed income to Husband in the amount of $150,000 per year. [5]   As these findings are supported 
 by the record, we conclude the family court did not abuse its discretion by 
 imputing $150,000 annual income to Husband.  
B.          Wifes Expenses
Husband argues the family court erred by awarding 
 $3,000 per month permanent periodic alimony to Wife based on inflated expenses 
 reported by Wife.  We disagree.
Although Husband claims that Wifes expenses 
 are inflated, he provides no evidence to support this assertion.  The family 
 court found, and the evidence supports, Wifes reported monthly needs of approximately 
 $3,100 were reasonable.  Husbands unsubstantiated claim to the contrary raises 
 a question of credibility, and we defer to the family court on this issue.  
 See Dorchester County Dept of Soc. Servs. v. Miller, 324 S.C. 
 445, 452, 477 S.E.2d 476, 480 (Ct. App. 1996) (Because the appellate court 
 lacks the opportunity for direct observation of the witnesses, it should accord 
 great deference to trial court findings where matters of credibility are involved.).  

C.          Lifestyle Financed by Debt         
Husband argues the family court erred by awarding 
 $3,000 per month permanent periodic alimony to Wife based on the parties lifestyle 
 maintained during the marriage because it was beyond their means.  We disagree.
Husband claims the family 
 court was penalizing him for both parties excessive lifestyle as evidenced 
 by the family courts statements thats the way he let her live and I made 
 him accept responsibility.  We disagree with this interpretation.  Reviewing 
 these statements in context, the family court was merely responding to Husbands 
 assertion that he should not be responsible for paying the debt incurred by 
 the parties during the marriage because he was unaware of Wifes expenditures.  
 These statements reflect the family courts belief that Husband was not only 
 aware of Wifes expenditures, but he contributed to the exorbitant amount of 
 debt incurred and should be required to pay a portion of it.  
Furthermore, in awarding alimony, the family court 
 expressly considered the relevant factors as set out in South Carolina Code 
 Annotated section 20-3-130(C) (Supp. 2002).  Specifically, the court considered 
 the unpaid debt incurred by the parties in maintaining their high standard of 
 living during the marriage, the fact the parties were married for twenty-five 
 years, and that Wife is forty-seven years old and earns twelve dollars per hour, 
 while Husband has the ability to earn more than $150,000 per year. 
 [6]   
D.          Alimony as a Disincentive
Husband argues the family court erred by awarding 
 $3,000 per month permanent periodic alimony to Wife because it will act as a 
 disincentive for Wife to contribute to her own support.  Husband contends Wifes 
 failure to seek a better paying job is evidence of her lack of incentive to 
 provide for her own support.  
Wife is employed at Blue Cross-Blue Shield, earning 
 twelve dollars per hour.  Wife obtained this job in January 2000, shortly before 
 the separation, so the parties would have health insurance.  After reviewing 
 Wifes monthly income and expenses, the family court found Wifes needs of $3,100 
 per month reasonable.  The family court also considered the length of the marriage, 
 the age of the parties, and the disparity of income between the parties.  Husband 
 admitted that Wife had been a good wife, mother, and homemaker, and that throughout 
 the marriage, he frequently traveled on business while Wife remained home caring 
 for their two children.  
Because the lifestyle enjoyed by the parties during 
 their marriage far exceeded $3,000 per month, Wife is forced to contribute to 
 her own support if she is to maintain any semblance of it.  As the purpose of 
 alimony is to place the supported spouse in the position of support enjoyed 
 during the marriage, we find Husbands argument to be without merit.  Johnson­, 
 296 S.C. at 300, 372 S.E.2d at 113.
We conclude the family court did not abuse its 
 discretion by awarding Wife permanent periodic alimony in the amount of $3,000 
 per month.  This amount, together with her own income, should be sufficient 
 to allow Wife to attain some semblance of the lifestyle she enjoyed during the 
 marriage.  See Johnson­, 296 S.C. at 300, 372 S.E.2d at 113 (holding 
 the purpose of alimony is to place the supported spouse, as nearly as practical, 
 in the position of support she enjoyed during the marriage).                     

II.          Identification 
 of Marital Property
Husband argues the family court erred 
 by classifying certain personal property as nonmarital.  We disagree.  
Marital property is all real and personal property 
 which has been acquired by the parties during the marriage and which is owned 
 as of the date of filing or commencement of marital litigation.  S.C. Code 
 Ann. § 20-7-473(1) (Supp. 2002).  However, property acquired by either party 
 by inheritance, devise, bequest, or gift from a party other than the spouse 
 is considered nonmarital property.  Id.  Apportionment of marital property 
 is within the discretion of the family court and will not be disturbed on appeal 
 absent an abuse of discretion.  Greene, 351 S.C. at 340, 569 S.E.2d at 
 399. 
[N]onmarital property may be transmuted into marital 
 property if it (1) becomes so commingled with marital property as to be untraceable;  
 (2) is titled jointly;  or (3) is utilized by the parties in support of the 
 marriage or in some other manner so as to evidence an intent by the parties 
 to make it marital property.  Calhoun v. Calhoun, 339 S.C. 96, 106, 
 529 S.E.2d 14, 20 (2000).  The spouse claiming transmutation must produce objective 
 evidence demonstrating that, during the marriage, the parties themselves regarded 
 the property as common property of the marriage.  Hatfield v. Hatfield, 
 327 S.C. 360, 368, 489 S.E.2d 212, 217 (Ct. App. 1997).    
The property at issue, including a dinette, sterling 
 silver, and childrens furniture, were gifts to Wife from her relatives.  Husband 
 claims Wifes testimony regarding the familys use of the property clearly establishes 
 an intent to treat it as marital property.  Although this property was used 
 in the marital home, Wife testified she did not intend for it to become marital 
 property.  Therefore, the evidence supports the family courts conclusion that 
 no transmutation occurred.  See Murray v. Murray, 312 S.C. 154, 
 157, 439 S.E.2d 312, 315 (Ct. App. 1993) (holding mere use of separate property, 
 without additional evidence of intent to treat it as marital property, is not 
 sufficient to establish transmutation).  Thus, the family court did not err 
 by classifying the property as nonmarital.
III.          Modification
Husband argues the family court erred 
 by modifying the divorce decree sua sponte and awarding Wife the linen 
 press when neither party asked for the relief granted.  We disagree.
To preserve an issue raised by an order in response 
 to a post-trial motion, the complainant must make a successive motion to alter 
 or amend the new judgment.  See Pelican Bldg. Ctrs. v. Dutton, 
 311 S.C. 56, 60, 427 S.E.2d 673, 675 (1993) (holding that although the appellant 
 learned for the first time upon receiving the order on a post-trial motion that 
 the respondent would be granted certain additional relief, the appellant must 
 move under Rule 59(e), SCRCP, to alter or amend the judgment to preserve the 
 record for appeal).  [A] second motion for reconsideration is appropriate 
 only if it challenges something that was altered from the original judgment 
 as a result of the initial motion for reconsideration.  In such a case, a new 
 judgment has replaced the previous judgment and the party aggrieved by the alteration 
 may move for reconsideration.  Coward Hund Const. Co., v. Ball Corp., 336 S.C. 1, 3, 518 S.E.2d 
 56, 58 (Ct. App. 1999). 
In her motion for reconsideration, Wife generally 
 asked for a reconsideration of the allocation of personal property.  At the 
 hearing, Wifes counsel specifically requested that Wife be given the linen 
 press in exchange for crediting Husband for alimony or paying him cash.  The 
 family court granted Wifes motion to modify the allocation of personal property 
 by awarding Wife the linen press.  Although the family court awarded Wife the 
 linen press, it did so in lieu of a refund generated from the return of a cherry 
 secretary to the seller rather than in exchange for alimony credit or cash as 
 requested by Wife.  Husband contends, by providing this unrequested relief, 
 the family court modified the divorce decree sua sponte.  
However, Husband did not object or make a motion 
 for reconsideration in response to the new allocation of property judgment.  
 As Husband failed to make a motion for reconsideration from this ruling, this 
 issue is not preserved for appellate review. See Coward Hund Const. Co., 336 S.C. at 3, 518 S.E.2d at 
 58 (holding a second motion for reconsideration is necessary if it challenges 
 something that was altered from the original judgment as a result of the initial 
 motion for reconsideration).  
IV.          Attorneys Fees
Husband contends the family court erred 
 by requiring him to pay $10,000 of Wifes attorneys fees.  We disagree.
The award of attorneys fees is left to 
 the discretion of the family court and will not be disturbed on appeal absent 
 an abuse of discretion.  Smith v. Smith, 308 S.C. 492, 496, 419 S.E.2d 
 232, 234-35 (Ct. App. 1992).  The factors to be considered in awarding reasonable 
 attorney fees and costs include the:  (1) nature, extent, and difficulty of 
 the case;  (2) time necessarily devoted to the case;  (3) professional standing 
 of counsel;  (4) contingency of compensation;  (5) beneficial results obtained;  
 and (6) customary legal fees for similar services.  Glasscock v. Glasscock, 
 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).
In considering the award of attorney fees, the 
 family court found that Wifes attorney is a long-standing practitioner in the 
 family court, beneficial results were obtained, the fees were reasonable in 
 relation to the complexity of the case, and there was a substantial disparity 
 of income between the parties.  In light of the factors enumerated in Glasscock, 
 the family court did not abuse its discretion by awarding attorneys fees.
CONCLUSION
For the foregoing reasons, the decision of the family court is 
 AFFIRMED.
HEARN, C.J., HOWARD, and KITTREDGE, JJ., concurring.

 
 [1] Husband did not file a motion to reconsider this 
 ruling.  

 
 
 [2] The family court also noted that Husband claimed only one-half of 
 the Walters Company net income in 2000 ($58,000), reporting the other one-half 
 as income to Wife, due to her ownership interest in the company.  However, 
 no distribution of the income was made to Wife and Husband retained the entire 
 $116,000 income.

 
 
 [3] Husband argues the family court erred by considering outdated and 
 unreliable income figures for the Walters Company from the years 1995 through 
 1999.  He argues these figures are unreliable but gives no basis for the assertion 
 other than they were five years old at the time of trial.  However, the family 
 court concluded the recent figures reported by Husband were unreliable and 
 we agree with this conclusion.  Thus, we see no error in the consideration 
 of the income reported by the Walters Company over the five-year period in 
 question.

 
 
 [4] Husband argues the family court erred in calculating the Walters 
 Company income for this five-year period.  The family court found the average 
 gross income for the years 1995-1999 was $183,000.  Conversely, Husband claims 
 the actual average for this time period was $164,460.  However, the family 
 court only imputed $150,000 to Husband as annual income.  Assuming, without 
 deciding, the family court erred in its calculation, the imputation of $150,000 
 annual income is still well below Husbands calculation of the average income 
 for this time period.  Thus, we find no reversible error.

 
 [5] In addition to this income, the family court concluded 
 that Husband owns a fifty percent share of Carolina Service Group, Inc., which 
 had gross sales of $900,000 in the year 2000.

 
 
 [6] Husband argues the family court failed to consider his expenses in 
 relation to his earning capacity.  However, the family court order is replete 
 with evidence of the courts consideration of both parties income and expenses.  
 Therefore, we find this argument to be without merit.