THIS OPINION 
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT 
 IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR. 
THE STATE OF SOUTH 
 CAROLINA
 In The Court of Appeals

 
 
 
 
 D. Ann Jennings, Appellant,
 
 
 

v.
 
 
 
 
 William B. Jennings, 
 Respondent. 
 
 
 

Appeal 
 From Lexington County
  Richard W. Chewning, III, 
 Family Court Judge

Unpublished 
 Opinion No. 2004-UP-429
 Submitted April 6, 2004  Filed 
 July 9, 2004

AFFIRMED 
 AS MODIFIED

 
 
 
 
 J. Michael Taylor, of Columbia, 
 for Appellant.
 W. Michael Duncan, of Columbia, 
 for Respondent.
 
 
 

PER 
 CURIAM:  The family court granted Ann Jennings (Wife) a divorce from William 
 Jennings (Husband) on the ground of adultery.  Wife appeals the alimony award, 
 equitable division of marital property, and imputation of income to Wife.  We 
 affirm as modified. [1] 
FACTS
Husband 
 and Wife married in June 1982 and separated nearly eighteen years later in May 
 2000. [2]   Wife filed for temporary 
 relief, and she was granted use of the home (though Husband made mortgage payments) 
 and temporary alimony of $500 per month.  After discovery was conducted, it 
 was revealed that Husband had committed adultery.  Wife filed an amended complaint, 
 seeking a divorce on the grounds of adultery or one years continuous separation.  
 
In the 
 final order, the family court granted Wife a divorce on the ground of Husbands 
 adultery.  The court also imputed income to Wife and awarded her $400 per month 
 in temporary alimony for eight years.  The court then equitably apportioned 
 the marital property between the parties.  Wife received:  one-third of the 
 General Electric stock held in Husbands name; one-half of Husbands Janus account; 
 one-half of Husbands retirement account; a 1991 Buick; and a payment of $2,200 
 from Husband for her half interest in the parties timeshare.  Husband received:  
 one-half of the Janus and retirement accounts; various items of personal property; 
 the timeshare; and a 1998 Ford.  The court found the parties home was titled 
 in Wifes name, ordered Wife to assume the mortgage payments, and awarded Husband 
 special equity in the amount of $65,250 from Wife.   
After 
 Wife filed a motion for reconsideration pursuant to Rule 59(e), SCRCP, the family 
 court maintained the amount of Wifes alimony but changed it to permanent periodic 
 alimony.  The court did not change any other portions of the prior order.  Wife 
 appeals.  
STANDARD OF REVIEW
In appeals from the family court, 
 this Court has the authority to find the facts in accordance with its view of 
 the preponderance of the evidence.  Rutherford v. Rutherford, 307 S.C. 
 199, 204, 414 S.E.2d 157, 160 (1992).  This broad scope of review does not, 
 however, require this Court to disregard the findings of the family court.  
 Stevenson v. Stevenson, 276 S.C. 475, 477, 279 S.E.2d 616, 617 (1981).  
 Neither is the Court required to ignore the fact that the family court judge, 
 who saw and heard the witnesses, was in a better position to evaluate their 
 credibility and assign comparative weight to their testimony.  Cherry v. 
 Thomasson, 276 S.C. 524, 525, 280 S.E.2d 541, 541 (1981).
 

 
LAW/ANALYSIS
 
I.       Alimony 
 

 Wife argues the 
 family court erred in imputing income to her when determining the alimony 
 award.  She further argues the court erred in awarding her only $400 in 
 monthly alimony.  
 A.      
 Imputation of Income
 
Wife argues the family 
 court erred in imputing income to her because she is unable to work as a result 
 of being afflicted with Raynauds Disease.  
 
Alimony is a substitute 
 for the support that is normally incident to the marital relationship.  McElveen 
 v. McElveen, 332 S.C. 583, 599, 506 S.E.2d 1, 9 (Ct. App. 1998).  The purpose 
 of alimony is to place the supported spouse in the position he or she enjoyed 
 during the marriage.  Id.  However, alimony should not serve as a disincentive 
 for spouses to improve their employment potential or to dissuade them from providing, 
 to the extent possible, for their own support.  Id.  In making an award 
 of alimony, the family court must consider several factors, including each partys 
 earning potential and reasonably anticipated income.  S.C. Code 
 Ann. § 20-3-130(C)(4), (6) (Supp. 2003) (In making an award of alimony or separate 
 maintenance and support, the court must consider and give weight in such proportion 
 as it finds appropriate to all of the following factors: . . . (4) the employment 
 history and earning potential of each spouse; . . . (6) the current and reasonably 
 anticipated earnings of both spouses. . . .).
 In McElveen, 
 the wife testified that she was not sure she could work full-time due to 
 her fibromyalgia, and she did not feel she could return to work until her 
 children were grown and the house was organized.  This court noted there 
 was no medical evidence in the record establishing the wifes condition 
 precluded her employment and that, in fact, the wife pointed to non-medical 
 reasons to delay her return to work.  McElveen, 332 S.C. at 600, 
 506 S.E.2d at 9-10.  
 In the present 
 case, Wife had several part-time jobs during the marriage, including her 
 job driving for the Commission for the Blind at the time of the hearing.  
 Wife testified that she suffered from Raynauds Disease, 
 [3] which caused severe migraines lasting up to three days, upon exposure 
 to cold temperatures or stress.  Thus, Wife explained that the only reason 
 she was able to work her part-time job driving for the Commission for the 
 Blind is because she was not depended upon and could call in sick at any 
 time. 
 
In the final order, the family court 
 considered Wifes health, but noted that no medical evidence was presented regarding 
 any ailment that prevented her from working.  The court specifically found that 
 Wife was physically and mentally capable of working full time.  The court 
 essentially found that Wife was underemployed and imputed a monthly income of 
 $885.  The sum of $885 per month resulted from Wife earning minimum wage while 
 working forty hours per week.  
 
 As in McElveen, 
 Wifes testimony in the present case that she could not work due to her 
 illness was not supported by any medical evidence.  Sections 20-3-130(C)(4) 
 and (C)(6) require the family court to consider each partys earning potential 
 and reasonably anticipated income.  S.C. Code Ann. § 20-3-130(C) 
 (Supp. 2003).  Because there was no evidence to support a finding that Wife 
 could not work due to her illness and Wife was working a part-time job at 
 the time of the final hearing, we find the family court did not commit an 
 abuse of discretion in considering Wifes earning potential and in imputing 
 income to her.    
 
B.      
 Amount of Alimony
 
Wife argues her $400 
 periodic alimony award was inadequate because the family court did not achieve 
 the desired objective of placing her close to the economic position she enjoyed 
 during the couples marriage.  We agree that the court failed to provide adequate 
 alimony to Wife.  
 
An award of alimony 
 rests within the sound discretion of the family court and will not be disturbed 
 absent an abuse of discretion.  Allen v. Allen, 347 S.C. 177, 184, 554 
 S.E.2d 421, 424 (Ct. App. 2001).  Factors to be considered in making an alimony 
 award include:  (1) duration of the marriage; (2) physical and emotional health 
 of the parties; (3) educational background of the parties; (4) employment history 
 and earning potential of the parties; (5) standard of living during the marriage; 
 (6) current and reasonably anticipated earnings of the parties; (7) current 
 and reasonably anticipated expenses of the parties; (8) marital and non-marital 
 properties of the parties; (9) custody of children; (10) marital misconduct 
 or fault; (11) tax consequences; (12) prior support obligations; and (13) other 
 factors the court considers relevant.  S.C. Code Ann. § 20-3-130(C) (Supp. 2003).  
 
 
At the time of the trial, Wife was 
 sixty-one years old and did not have a high school diploma.  Wife brought a 
 pre-marital estate of $250,000 into the marriage.  Wife stated the couple enjoyed 
 a comfortable lifestyle that included annual out-of-state vacations and a 
 timeshare in Myrtle Beach.   Shortly after the parties married, Wife purchased 
 and operated a dry-cleaning business until she sold it in 1986.  As previously 
 discussed, Wife testified that she suffered from Raynauds Disease, but she 
 held several part-time jobs during the marriage.  However, at the request of 
 Husband, Wife never obtained a permanent, full-time job after selling her dry-cleaning 
 business in 1986. 
 Wife received 
 $258.33 in gross monthly income from her part-time job, and she expected 
 to begin receiving Social Security income in the amount of $483 per month 
 upon reaching the age of sixty-two.  Wife listed $2,808 in expenses on her 
 financial declaration, which included the $943 mortgage payment made by 
 Husband.  
 
At the time of the 
 final hearing, Husband was fifty-seven years old, had two years of a college 
 education, and the family court found he had a gross monthly income of $5,176, 
 and a net monthly income of $3,710. [4]   He had $3,173.83 in monthly expenses, including 
 paying $500 in alimony pursuant to the temporary order and paying the mortgage 
 on Wifes house.  Although Husband denied he had an affair during the marriage, 
 he admitted he had a close secret friendship with one woman during the marriage 
 and a sexual relationship with another woman after the parties separated. 
 In awarding $400 
 in monthly alimony, the family court noted that it considered all the relevant 
 factors set forth in section 20-3-130(C).  The order specifically noted 
 the parties ages, Husbands income, Wifes ability to work, and Wifes 
 expectation of Social Security benefits.  Although not discussed in the 
 paragraph dealing with alimony, the court mentioned other facts that are 
 statutory considerations in section 20-3-130(C): the duration of the marriage, 
 Husbands marital misconduct, and marital and non-marital properties. 
 
Reviewing the order 
 shows that the family court considered many of the factors relevant to an alimony 
 award.  However, we do not believe the court provided an adequate award of alimony 
 to Wife.  
 
The order provided 
 that Wife would be responsible for the $943 mortgage payment on her home, leaving 
 her with expenses of $2,808.  Including the imputed minimum wage income of $885 
 and the Social Security income of $483, Wifes total income would be $1,368. [5]   This would leave her with a monthly deficit of $1,440.  Including 
 the $400 in alimony awarded by the family court, Wife will still have a deficit 
 of $1,040.  
 
Husband, on the other 
 hand, listed a gross monthly income of $5,176, and a net monthly income of $3,710.35.  
 Reducing his $3,173.83 in expenses by the $943 mortgage payment assumed by Wife 
 and the $500 temporary alimony payment, Husband had expenses of $1,730.83.  
 Thus, after paying his expenses and before calculating any alimony award, Husband 
 would have $1,979.52 in surplus funds.  
 
Considering the significant 
 drop in Wifes standard of living, Wifes expenses, Husbands income, and Husbands 
 infidelity, we find the family court erred in only awarding $400 in alimony 
 to Wife.  We modify the award and order Husband to pay Wife $900 in alimony 
 beginning with the month of August 2004.  See Morris v. Morris, 
 335 S.C. 525, 533, 517 S.E.2d 720, 724 (Ct. App. 1999) (finding that even though 
 the family court applied the factors relevant to an alimony award, the award 
 was inadequate in light of the husbands significant income, the drop in the 
 wifes standard of living, and the husbands adultery).  
 II.      
 Apportionment of Property
 Wife argues the 
 family court erred in apportioning the property.  She argues the method 
 used by the court to determine Husbands interest in the home was erroneous 
 and the $62,250 award of special equity to Husband was excessive. [6]   She further argues the court 
 erred in dividing up various other items of personal property, including 
 the timeshare and the porch furniture. 
 
The apportionment of marital property 
 will not be disturbed on appeal absent an abuse of discretion.  Bungener 
 v. Bungener, 291 S.C. 247, 251, 353 S.E.2d 147, 150 (Ct. App. 1987).  Section 
 20-7-472 lists fifteen factors for the court to consider in equitably apportioning 
 a marital estate.  S.C. Code Ann. § 20-7-472 (Supp. 2003); Greene v. Greene, 
 351 S.C. 329, 340, 569 S.E.2d 393, 399 (Ct. App. 2002).  Although nonmarital 
 property is not subject to equitable distribution as such, . . . the family 
 court may properly award the other spouse a special equity in the property.  
 Greene, 352 S.C. at 337, 569 S.E.2d at 398.  A spouse has an equitable 
 interest in improvements to property to which he or she has contributed, even 
 if the property is nonmarital.  Johnson v. Johnson, 296 S.C. 289, 299, 
 372 S.E.2d 107, 113 (Ct. App. 1988).  On appeal, this court looks to the overall 
 fairness of the apportionment.  Id. at 300, 372 S.E.2d at 113.  If the 
 end result is equitable, it is irrelevant that the appellate court would have 
 arrived at a different apportionment.  Id.  
 
Wife complains the family court erred 
 in calculating the amount of Husbands special equity.  Wife provided $99,525.28 
 of her personal, non-marital funds towards the construction of the parties 
 home such that only an $85,000 mortgage was needed.  The house was titled in 
 Wifes name, and the mortgage was jointly titled in both parties names.  At 
 the time of the final hearing, the balance due on the mortgage was $40,949.44.  
 The parties do not dispute that Husband made all of the mortgage payments on 
 the house, amounting to $130,500. 
 
Wife introduced an appraisal valuing 
 the home at $240,000.  Husbands appraisal indicated the home was valued at 
 $270,000.  The family court adopted Husbands valuation, and, after subtracting 
 the amount remaining on the mortgage, the family court determined the house 
 had a net equity of $229,000.  To determine the amount of equity due to Husband, 
 the court considered two methods of calculation.  First, Wifes separate, non-marital 
 contribution to the acquisition of the home was subtracted from the net equity, 
 which resulted in $129,000 of equity to be divided between the parties.  Second, 
 the court considered the $130,500 Husband made in total mortgage payments as 
 equity to be divided equally between the parties.  The court adopted the second 
 method of valuation and determined Husband was due $65,250 in special equity 
 from Wife.   
 
Wife argues this method of calculating 
 Husbands special equity interest in the home was erroneous because the marital 
 portion of the net equity in the home was only 30.68 [7] percent.  Thus, she asserts only 
 $70,272.71 [8] of the equity 
 was marital and Husband was only entitled to $35,136.35. 
 
Although the family court used an 
 unusual method to calculate Husbands special equity, we find no error with 
 the fairness of the apportionment.  There is no set formula to assist the court 
 in dividing property.  See, e.g., Smith v. Smith, 294 S.C. 194, 
 198, 363 S.E.2d 404, 407 (Ct. App. 1987) (In valuing marital assets, the trial 
 court is fully within its discretion to choose the valuations of one party 
 over those of the other party.).  Further, Husband paid all of the mortgage 
 payments on Wifes home.  Husbands special equity award only amounted to 28.5 
 percent of the net equity of the home.  Because we find the special equity award 
 to be fair, the family court did not abuse its discretion in determining Husbands 
 special equity in Wifes home.  
 
Further, we find no error with the 
 courts determination that Husband was entitled to the timeshare and various 
 personal property items, including the porch furniture.  With the exception 
 of the General Electric stock, of which Wife received one-third, the court awarded 
 one-half of the marital assets to each party.  Husband was awarded the timeshare 
 and ordered to pay Wife for her one-half interest in it.  An appraisal service 
 listed over 200 items of personal property in Wifes home with a total value 
 of $14,457.  Husband indicated he wanted approximately fifty of those items, 
 valued at $3,607, which included the porch furniture.  The court awarded Husband 
 the items he requested.  Considering these facts, we find no abuse of discretion.  
 
 
CONCLUSION
 The family court did not abuse 
 its discretion in imputing income to Wife or awarding special equity to 
 Husband.  However, the court erred in calculating the amount of the alimony 
 award.  Accordingly, the family courts order is 
 AFFIRMED AS MODIFIED. 
 
 
HUFF and STILWELL, JJ. and CURETON, 
 AJ., concur.
 
 
 
 [1] We decide this case without oral argument pursuant 
 to Rule 215, SCACR.
 
 
 
 [2] No children were born as a result of this marriage. 
 
 
 
 [3] Raynauds Disease is defined as a peripheral vascular disorder 
 found most frequently in females between the ages of 18 and 30.  It is characterized 
 by abnormal vasoconstriction of the extremities upon exposure to cold or 
 emotional stress.  Tabers Cyclopedic Medical Dictionary 1563-64 
 (16th ed. 1989).
 
 
 
 [4] Husband submitted a new financial declaration at the final hearing 
 that is not included in the record.  He testified regarding his income and 
 expenses and the family court adopted his amounts.    
 
 
 
 [5] This assumption does not take into account the effect, if any, 
 that a full-time income would have on Wifes ability to continue receiving 
 Social Security income.
 
 
 
 [6] The family court found the home was titled solely in Wifes name 
 and awarded Husband special equity in the home.  Although the court did 
 not specifically find that the home was Wifes nonmarital property, it was 
 treated as such and the parties do not dispute that it was nonmarital.  
 Husband, however, argues on appeal that the house was transmuted into marital 
 property.  The issue of transmutation was not raised to or ruled upon by 
 the family court judge and, thus, is not preserved for review.  McDavid 
 v. McDavid, 333 S.C. 490, 497, 511 S.E.2d 365, 368-69 (1999) (holding 
 an issue not raised to or ruled on by the family court should not be considered 
 by the appellate court).  Accordingly, we proceed as if the home is non-marital 
 property.  
 
 
 
 [7] Wife arrives at this percentage using a cost approach.  She adds 
 her contributions to the house to the amount the mortgage had been paid 
 to obtain the total cost of the house: $99,525.28 + $44,050.56 = $143,575.84. 
  She then finds that the amount the mortgage had been paid, or $44,050.56, 
 was 30.68 percent of the total cost, and this equaled the percentage to 
 be used to calculate the amount of marital equity.  
 
 
 
 [8] Wife arrives at the equity in the home by subtracting the amount 
 the mortgage had been paid from the value of the home:  $270,000 - $40,949.44= 
 $229,050.56.