THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Barbara J. Kirchner, Respondent,
v.
Allen W. Kirchner, Appellant.
 
 
 

Appeal From Aiken County
 Dale Moore Gable, Family Court Judge

Unpublished Opinion 2005-UP-218
Submitted March 1, 2005  Filed March 24, 2005

AFFIRMED IN PART,
REVERSED IN PART,
AND REMANDED

 
 
 
Victoria L. Eslinger and Dennis J. Lynch, both of Columbia, for Appellant.
J. Michael Taylor, of Columbia, for Respondent.
 
 
 

PER CURIAM:  This is an appeal from a grant of divorce to Barbara J. Kirchner (Wife) from Allen W. Kirchner (Husband).  Husband appeals the family courts decision apportioning certain portions of the marital estate, awarding alimony in the amount of $3,800 per month, admitting the testimony of Wifes rebuttal witness, holding Husband in contempt, and awarding attorneys fees.  We affirm in part, reverse in part, and remand.[1]  
FACTS
Wife and Husband, a physician, were married in February of 1985.  In March of 2000, after years of discord, Wife filed for a divorce based on the ground of adultery.  She also sought several restraining orders, alimony, equitable distribution, AIDS testing, and attorneys fees.  In a temporary agreement reached by the parties and approved by the family court, Husband agreed to pay Wife $4,200 a month.  In February 2002, Husband filed a motion to reduce alimony and support obligations because he was no longer an employed member of his practice and no longer received a salary.  Wife filed for contempt and a rule to show cause for Husbands failure to pay the temporary alimony and the auto insurance agreed upon in the pendente lite order.  
Prior to the final hearing, the parties reached a settlement agreement regarding the distribution of all the marital property except for possession of the family dog, Sam.  The family court approved the property settlement agreement between the parties.  The court also granted Wife a divorce on the ground of adultery, gave possession of Sam to Wife, found Husband in contempt for failing to pay the temporary alimony, and awarded Wife permanent alimony of $3,800 per month and attorneys fees.  Husband appeals.      
STANDARD OF REVIEW
In appeals from the family court, this court has authority to find the facts in accordance with our own view of the preponderance of the evidence. Woodall v. Woodall, 322 S.C. 7, 10, 471 S.E.2d 154, 157 (1996).  However, this broad scope of review does not require us to disregard the findings of the family court.  Stevenson v. Stevenson, 276 S.C. 475, 477, 279 S.E.2d 616, 617 (1981).  We are mindful that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.  Bowers v. Bowers, 349 S.C. 85, 91, 561 S.E.2d 610, 613 (Ct. App. 2002).
LAW/ANALYSIS
I. Hilton Head condominium distribution
Husband claims the family court erred in equally dividing the contents of the Hilton Head condominium between the parties because the property settlement agreement, approved by the court, awarded 60 percent from the proceeds of the sale of the property to Husband and the remainder to Wife.  We agree.[2]
Litigants in this state have consistently been encouraged by our courts to reach extra-judicial agreements on issues arising out of the marital relationship, when possible, to enhance judicial efficiency.  Drawdy v. Drawdy, 275 S.C. 76, 78, 268 S.E.2d 30, 31 (1980).  Nevertheless, the family court has the duty to determine whether any such agreement was entered into freely and voluntarily and whether it was fair.  Funderburk v. Funderburk, 286 S.C. 129, 131, 332 S.E.2d 205, 206 (1985).  Further, the family court must only determine whether the agreement is within the bounds of reasonableness from both a procedural and substantive perspective when determining if the agreement is fair.  The court should not determine the parties rights as if there had been no agreement.  Burnett v. Burnett, 290 S.C. 28, 30, 347 S.E.2d 908, 909 (Ct. App. 1986).
The parties submitted a property settlement agreement disposing of the entirety of their marital property with the exception of the dog, Sam.  The parties specifically described the nature of the agreement regarding the distribution of the Hilton Head condominium:

So far as the Hilton Head condominium is concerned, there are four sets of items that are nonmarital property of the husbands. . . . Marital property, the husband will get the couch, the Wife will get the six-drawer white chest.  The rest of the furniture in the condominium is to be sold in a reasonable manner, probably through Mr. Watts or some other estate service, and the proceeds split 60 percent to the husband, 40 percent to the wife.

The court received the agreement into evidence, questioned the parties extensively about the agreement and its voluntariness, and subsequently approved it.  The court also made certain the parties understood that the division of the property pursuant to the settlement agreement would be final.  The court specifically noted during the hearing that it recognized the 60/40 division of the Hilton Head condominium.   
Wifes attorney submitted a proposed order.  Although the court had previously approved the 60/40 property settlement agreement, the proposed order indicated that the Hilton Head property was to be divided 50/50.  Prior to the issuance of the order, Husbands attorney wrote to the family court judge and indicated the proposed order did not comport with the settlement agreement of the parties.  Wifes attorney, however, indicated in correspondence that after the final hearing, Husband took everything out of the Hilton Head condominium, instead of the few agreed upon items, and offered to recompense Wife by giving her 50 percent instead of the previously agreed upon 40 percent.  The family court approved the proposed order.  
Reviewing the evidence in the record, we find the family court erred in ordering an equal division of the Hilton Head condominium.  The only agreement before the court was that Husband would take certain specified items from the condominium and the parties would divide the value of it 60/40.  Nothing regarding a subsequent agreement was presented to the court.  Therefore, the courts order regarding the division of the condominium is reversed.  We remand this issue for a hearing before the family court to determine whether a subsequent agreement between the parties occurred and to award the proper distribution to the parties. 
II. Alimony
Husband claims the family court erred in awarding $3,800 per month in permanent alimony.  He argues the courts findings were not supported by the record and failed to consider both parties reasonably anticipated income, the parties health, and Wifes needs.  We disagree.
An award of alimony rests within the sound discretion of the family court and will not be disturbed absent an abuse of discretion.  Allen v. Allen, 347 S.C. 177, 184, 554 S.E.2d 421, 424 (Ct. App. 2001).  Alimony is a substitute for the support that is normally incident to the marital relationship.  McElveen v. McElveen, 332 S.C. 583, 599, 506 S.E.2d 1, 9 (Ct. App. 1998).  The purpose of alimony is to place the supported spouse in the position he or she enjoyed during the marriage.  Id.  However, alimony should not serve as a disincentive for spouses to improve their employment potential or to dissuade them from providing, to the extent possible, for their own support.  Id.  
Factors to be considered in making an alimony award include:  (1) duration of the marriage; (2) physical and emotional health of the parties; (3) educational background of the parties; (4) employment history and earning potential of the parties; (5) standard of living during the marriage; (6) current and reasonably anticipated earnings of the parties; (7) current and reasonably anticipated expenses of the parties; (8) marital and non-marital properties of the parties; (9) custody of children; (10) marital misconduct or fault; (11) tax consequences; (12) prior support obligations; and (13) other factors the court considers relevant.  S.C. Code Ann. § 20-3-130(C) (Supp. 2004).  
Evidence was presented regarding the parties employment and health histories.  Wife testified that she met Husband while she was employed full-time as a registered nurse.  During the marriage, Wife never worked more than part-time, and she did not work at all after the early 1990s.  She testified that she would need some amount of continuing education to go back to nursing.  Wife suffered from major depression, high cholesterol, and mitral valve prolapse, which she controlled with medication.  She was constantly fatigued and could not concentrate because of depression.  In fact, her psychiatrist testified that Wife had a difficult time sequencing things in order to make reasonable decisions. . . .  If we are talking about a high degree of ability to reason and make adequate judgments at times, that is clearly impaired in [his] observations of [Wife].  Husband submitted the testimony of a vocational expert to show that Wife was potentially employable in the nursing field, though she admittedly did not evaluate Wifes personal situation other than contacting the South Carolina Board of Nursing.   
Prior to their separation, the parties enjoyed a comfortable lifestyle, including living in the $700,000 marital home and taking several vacations a year.  After the separation, Wife moved to a small apartment and suffered from depression.  Wifes financial declaration indicated that she incurred $3,306.54 in monthly expenses.  
Husband was a successful physician with Aiken Obstetrics and Gynecology Associates, P.A.  After twenty-five years, he retired in September 2002 because a neurological disorder in his hand rendered him unable to perform surgeries.  However, his financial situation was strong.  He received a tax-free disability stipend of $7,800 per month, considerably more than his $60,000 annual salary as an office gynecologist.  He also received a property award in the divorce of approximately $1 million, including the marital home, and had access to an additional $800,000 in non-marital assets.  He admitted on cross-examination that despite his neurological deficit, he was still capable of employment as an office gynecologist.  Furthermore, he spent upwards of 100 hours per month volunteering as a deputy sheriff, proving he was capable of gainful employment in some capacity.   
Evidence regarding Husbands marital misconduct and ability to maintain his standard of living was also presented.  Husband admitted that he began an adulterous relationship with Teresa Ellis seven months before he and Wife separated.  He continued this relationship, and Ellis and her son moved into the former marital residence, where Husband provided Ellis living expenses, automobile insurance, health and life insurance, and shopping expenses.  Ellis was also unemployed and was no longer receiving unemployment checks at the time of the final hearing.  After his retirement in September 2002, Husband continued to pay the mooring and the maintenance on his fathers boat, transferred property worth $80,000 to his son for no consideration and in violation of the pendente lite order, and purchased Ellis a $1,000 mink coat and a $1,800 diamond bezel for her Rolex watch.  
Based on the evidence presented to the family court, we find the family court adequately considered all the statutory factors, including the parties employment histories and Husbands misconduct, in determining alimony.  Although the evidence indicated that Wife could become employable, the evidence also indicated that her lifestyle was substantially diminished by the divorce while Husbands remained unchanged.  Despite Husbands argument that alimony should be lowered because he was unemployed, the evidence indicated that Husband could substantially improve his financial status by electing to return to practice as an office gynecologist.  The evidence also showed that Husband had access to substantial resources and could easily pay the ordered alimony while maintaining his standard of living.  See McMurtrey v. McMurtrey, 272 S.C. 118, 121, 249 S.E.2d 503, 505 (1978) (noting that there is no limitation that alimony payments be made solely from current earnings).  Because the family court adequately considered the factors, we find no abuse of discretion in awarding alimony to Wife in the amount of $3,800 per month.   
III. Sam
Husband claims the family court erred in awarding the dog, Sam, to Wife.  We disagree.
Family pets are considered personal property.  See Richardson v. Florida Cent. & P.R. Co., 55 S.C. 334, 335, 33 S.E. 466, 466 (1899) (There is no longer any room to doubt that a dog is personal property in this State.).  The apportionment of marital property will not be disturbed on appeal absent an abuse of discretion.  Bungener v. Bungener, 291 S.C. 247, 251, 353 S.E.2d 147, 150 (Ct. App. 1987).  Section 20-7-472 lists fifteen factors for the court to consider in equitably apportioning a marital estate.  S.C. Code Ann. § 20-7-472 (Supp. 2004); Greene v. Greene, 351 S.C. 329, 340, 569 S.E.2d 393, 399 (Ct. App. 2002).  On appeal, this court looks to the overall fairness of the apportionment.  Johnson v. Johnson, 296 S.C. 289, 300, 372 S.E.2d 107, 113 (Ct. App. 1988).  If the end result is equitable, it is irrelevant that the appellate court would have arrived at a different apportionment.  Id.   
The evidence elicited at the final hearing showed that Wife purchased Sam and named him.  She also was the dogs primary caretaker, including taking him to his veterinary appointments.  Wife testified as to her extreme emotional attachment to the dog, and Wifes daughter confirmed this testimony.  Furthermore, Husband recognized Wifes ownership of the dog because he would notify her when he was taking the dog out of town with him.  In addition, whereas Wife had ownership of the dog upon separation, Husband seized the dog from the kennel Wife had boarded him at and had not allowed Wife access to the dog since that time.  Thus, there was sufficient evidence in the record that showed Sam belonged primarily to Wife.  Most importantly, Husband retained approximately $800,000 of non-marital assets and obtained 60 percent of the marital assets from this divorce, including the family home.  Therefore, we find no abuse of discretion in awarding the dog to Wife.        
IV. Appropriate rebuttal witness
Husband claims the family court erred in allowing Wifes psychiatric expert to testify as a rebuttal witness to Husbands vocational expert.  We disagree.
We recognize that the admission of reply testimony is within the discretion of the trial judge.  Vernon v. Provident Life & Accident Ins. Co., 266 S.C. 208, 222, 222 S.E.2d 501, 508 (1976).  Further, the rules of discovery were designed to promote the full examination of all relevant facts and issues and to discourage litigants from surprising one another through the introduction of unexpected testimony.  Kramer v. Kramer, 323 S.C. 212, 217, 473 S.E.2d 846, 848 (Ct. App. 1996).  In order to encourage compliance with discovery rules, courts can impose sanctions upon parties who violate them, including the exclusion of witnesses whose identities have been withheld.  Id.  However, because exclusion of a witness is a severe sanction, it should only be imposed after the court inquires into:  (1) the type of witness involved; (2) the content of the evidence to be presented; (3) the nature of the failure to identify the witness; and (4) the degree of surprise to the other party.  Id. at 217, 473 S.E.2d at 848-49.
Wife testified regarding her ailments, including a heart condition, depression, anxiety, and fatigue, as well as the hurdles she would have to overcome in order to return to her former employment as a nurse.  During the presentation of Husbands case, his vocational expert testified as to the employment positions available to Wife based on her educational level, experience, skills, and abilities.  However, the expert admitted that she did not take into consideration Wifes mental and physical condition, though she reviewed the health records.  Following her deposition, the expert, who admittedly had already formulated her opinion as to Wifes employability, reviewed Wifes psychological and psychiatric records.  She then stated that if [Wife] was psychologically incapable or psychiatrically incapable of doing the job of a registered nurse, it may affect her employability.  Over Husbands objection, Wife presented the testimony of her treating psychiatrist as an expert in reply.  The expert testified that Wifes skills and abilities were limited because of her depression and mitral valve prolapse condition, thereby severely restricting her employment capabilities.   
Husband argues it was error for the family court to allow Wifes expert to testify to matters that should have been presented in her case in chief.  We agree that Wife broached the topic of her inability to obtain employment during her presentation of the evidence, and it would have been appropriate for her to present her expert to testify regarding her employment prospects at that time.  However, Husbands expert testified regarding the general ability of someone with a nursing license to obtain employment.  Wife was able to present an expert to reply to this evidence by testifying about Wifes specific abilities.  Although Wife did not specifically note the expert on her witness list prior to the start of trial, she obtained the expert during the six week break in the trial.  Further, because Wifes expert responded to Husbands expert in reply, we find no prejudice or surprise and, thus, the family court did not abuse its discretion in allowing the reply testimony.  
V. Contempt
Husband claims the family court erred in finding him in contempt of the pendente lite order because he was unable to pay.  We disagree.
Although a determination of contempt is within the family courts discretion, an order holding a party in contempt should be reversed when the holding is based on a finding that is without evidentiary support or when there is . . . an abuse of discretion.  Means v. Means, 277 S.C. 428, 431, 288 S.E.2d 811, 812-13 (1982).  To sustain a finding of contempt, the record must be clear and specific as to acts or conduct upon which the finding is based.  Curlee v. Howle, 277 S.C. 377, 382, 287 S.E.2d 915, 918 (1982).
If a valid court order exists, a person who is obligated to pay alimony can be held in contempt of court for not paying the required amount on time.  There must be a finding of willful contempt.  Id.  When the contemnor is unable to pay, he should not be held in contempt.  Hicks v. Hicks, 280 S.C. 378, 381, 312 S.E.2d 598, 599 (Ct. App. 1984).  
The temporary order memorialized the parties agreement whereby Husband would provide $4,200 per month in temporary alimony to Wife and pay her automobile insurance until a final order.[3]  Husband admitted that despite the pendente lite order, he only paid Wife $3,300 in February of 2002 and thereafter.  He also dropped Wife from his automobile insurance policy.  Husband claimed he could not afford the alimony payments because he lost his job due to illness.  However, Husband had access to approximately $1.8 million worth of both non-marital and marital property after the equitable division.  He also received $7,800 per month of nontaxable income from his disability policy.  Furthermore, in absolute defiance of the court order, he transferred property worth $80,000 to his son for no consideration.  Lastly, Husband was supporting his paramour and her son through lodging, car maintenance, credit card purchases, automobile insurance, and numerous gifts, including a mink coat and a diamond bezel for a Rolex watch.  The family court found Husband in contempt for purposefully reducing Wifes alimony payments in violation of the court order because Husband had the means, but not the inclination, to obey the Order of this Court.  
Husband willfully reduced Wifes alimony prior to obtaining a new order reducing the amount of alimony.  Therefore, we find the family court did not abuse its discretion in holding Husband in contempt.
VI. Attorneys fees      
Husband claims the family court erred in awarding Wife attorneys fees and costs because her motion for attorneys fees was untimely and there was no other evidence in the record to support the award.  We disagree.    
The award of attorney fees is within the discretion of the court.  Hardwick v. Hardwick, 303 S.C. 256, 261, 399 S.E.2d 791, 794 (Ct. App. 1990).  In determining whether to award attorneys fees, the court should consider each partys ability to pay his or her own fees, the beneficial results obtained by their attorney, the parties respective financial conditions, and the effect of the fee on each partys standard of living.  E.D.M. v. T.A.M., 307 S.C. 471, 476-77, 415 S.E.2d 812, 815 (1992).  Furthermore, once the court decides to award attorneys fees, it must determine a reasonable award.  The court should look at several factors, including the difficulty of the case, the time involved, the professional standing of the counsel, and the customary legal fees for similar services.  Glasscock v. Glasscock, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).  
Testimony in this case was held on January 31, 2002, February 4, 2002, and March 22, 2002.  During trial, Wifes attorney asked permission to submit an affidavit for attorneys fees at the end of the case so [they could] incorporate the present trial time.  Husband did not have an objection to this request to hold the record open.  Wife also testified as to her attorneys retainer of $15,000 and his hourly rate of $200.00.  After Wife finished her case-in-chief, there was a six-week period during which she was allowed to depose one of Husbands experts.  Unfortunately, the clerk of court misplaced some exhibits in the case, and the parties agreed to recreate the record after both sides concluded testimony.  Furthermore, the court requested the parties submit briefs addressing Husbands request for the reduction of temporary alimony and the rule to show cause.   
The court requested that Wife draft a final order on April 29, 2002.  On May 6, 2002, Wifes counsel submitted an affidavit in support of Wifes request for attorneys fees and costs, noting that counsel was very experienced in marital matters and had incurred $32,911.25 in the case.  Husband moved to strike the affidavit in support of attorneys fees, arguing that:  Wife rested her case without presenting any evidence regarding attorneys fees; Wife failed to reserve the right to present additional evidence on the matter; and Wife waived any request for fees by not addressing it in the final hearing.  It does not appear from the record that a hearing was ever held on Husbands motion to strike.  Nevertheless, the family court awarded Wife $16,455.62 in attorneys fees in the final decree of divorce.   
Husband complains about the timing of the affidavit in support of the attorneys fees.[4]  Although the usual practice certainly is to submit affidavits in support of attorneys fees during the trial of a matter, we find the affidavit was timely submitted in the present case.  Husband agreed to allow Wife to submit her affidavit in support of attorneys fees after the case, in order to include time expended on the trial.  Wifes attorney was required to spend more time after testimony was completed to reconstruct the record and draft responses to various motions.  Further, Wifes affidavit in support of attorneys fees was submitted before a final order was signed and before the case was concluded by resolution of the issues.  Accordingly, we find no abuse of discretion in considering the affidavit in support of attorneys fees in this case.  
CONCLUSION
Because the family court erred in apportioning the condominium contents equally, contrary to the only property settlement agreement presented to the court, we reverse and remand to the family court for a hearing to determine whether a subsequent agreement between the parties occurred and to equitably distribute the condominium proceeds.  We affirm the Wifes alimony award, the award of the dog to Wife, the admittance of the psychiatric expert as a rebuttal witness, the finding of contempt, and the award of attorneys fees to Wife.  
For the reasons stated, the family courts decision is hereby
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.  
ANDERSON, BEATTY, and SHORT, JJ., concur.

[1] Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.  
[2] Wife raises a question regarding whether this issue is preserved for review.  Although Husband failed to file a post-judgment motion requesting the family court to address why the final order differed from the approved agreement, the approval of the agreement was raised to and ruled upon by the family court.  Accordingly, we address Husbands issue on appeal.  
[3] The family court is authorized by several statutes to award pendente lite alimony and suit costs.  S.C. Code Ann. § 20-3-130(A) (Supp. 2004); S.C. Code Ann. § 20-3-120 (Supp. 2004); S.C. Code Ann. § 20-3-140 (Supp. 2004).  
[4]  Husband does not complain that the affidavit submitted by counsel does not support the amount of the attorneys fees or that the family court failed to consider the relevant factors in making the award.